Page 1

1          IN THE UNITED STATES DISTRICT COURT
             FOR THE DISTRICT OF DELAWARE

2                        - - -

3
   PerDiemCo LLC,           :   Civil Action
4          Plaintiff,       :
                            :
5          vs.              :
                            :
6   CalAmp Corp.,           :
           Defendant.       :   NO. 1:20-cv-01397
7
                         - - -

8
                  Monday, October 25, 2022
9
                         - - -

10
11      BEFORE:   THE HONORABLE SHERRY FALLON,
                  Magistrate Judge
12                       - - -

13      Teleconference on Motions to Compel held via
14   Zoom/Veritext Virtual, commencing at 2:00 p.m., and
15   reported stenographically by Susan Marie Migatz, a
16   Federally Approved Registered Merit Reporter,
17   Certified Realtime Reporter, Certified LiveNote
18   Reporter, and Notary Public.
19
                         - - -

20
21
22
                  VERITEXT LEGAL SOLUTIONS
23                 MID-ATLANTIC REGION
             1801 Market Street - Suite 1800
24           Philadelphia, Pennsylvania 19103

Page 2

1   APPEARANCES:    (Via Teleconference)

2

        DEVLIN LAW FIRM LLC
3       BY:  PETER MAZUR, ESQUIRE
        1526 Gilpin Avenue
4       Wilmington, DE 19806
        302-449-9010/pmazur@devlinlawfirm.com
5                and
        DAVIDSON BERQUIST JACKSON & GOWDEY LLP
6       BY:  DONALD L. JACKSON, ESQUIRE
             JAMES D. BERQUIST, ESQUIRE
7       8300 Greensboro Drive, Suite 500
        McLean, VA 22102
8       571-765-7703/djackson@dbjg.com
        571-76507702/jberquist@dbjg.com
9       Representing the Plaintiff

10

        BARNES & THORNBURG, LLP
11      BY:  RYAN P. COX, ESQUIRE
        222 Delaware Avenue, Suite 1200
12      Wilmington, DE 19801
        302-300-3432/rcox@btlaw.com
13               and
        BY:  JOSHUA T. LARSON, JR., ESQUIRE
14      11 South Meridian Street
        Indianapolis, IN 46204-3535
15      317-231-7729/jtlarson@btlaw.com
        Representing the Defendant

16

17                      - - -

18

19

20

21

22

23

24

Page 3

1              THE COURT:  Good afternoon, everyone.
2    This is Magistrate Judge Sherry Fallon joining the
3    conference call in the discovery dispute in PerDiem
4    versus CalAmp, Docket No. 20-01397.
5              First I'd like to find out who's
6    dialed into our call.  Do we have our court
7    stenographer on the line?
8              THE COURT REPORTER:  Yes, you do,
9    Your Honor.  This is Susan Migatz, the court
10   reporter.
11             THE COURT:  All right.  Very well.
12   Thank you, Susan.
13             And from my end of the proceedings I
14   am joined by my law clerk and fall interns.
15             For the plaintiff, who is on the
16   line?
17             MR. MAZUR:  Good afternoon, Your
18   Honor.  This is Peter Mazr, Devlin Law Firm, for
19   PerDiem.  With me today are James Berquist and
20   Donald Jackson, Davidson Berquist Jackson & Gowdey.
21   Mr. Jackson will be taking the lead for PerDiem this
22   afternoon.
23             THE COURT:  Very well.  Thank you.
24             And for the defendant, CalAmp?

```
                                            Page 4
 1               MR. COX:  Good afternoon, Your Honor.
 2    This is Ryan Cox from Barnes & Thornburg on behalf
 3    of CalAmp Corporation.  With me I have Joshua Larson
 4    from our Indianapolis office who will be taking the
 5    lead on today's call.
 6                    THE COURT:  Thank you.
 7                    All right.  This is PerDiem's motion
 8    to compel.  It's raised a number of issues.  I think
 9    in order to streamline this process I'd like to
10    begin with a few questions.  Certainly both sides
11    will have a full and fair opportunity to put before
12    the Court their arguments.
13                    But just to begin, I want to ask you,
14    Mr. Jackson, what the plaintiff was trying to convey
15    to the Court in attaching the defendant's entire
16    document production of 8,800 pages and how that was
17    respectful of the Court's time and resources.
18                    MR. JACKSON:  Good afternoon, Your
19    Honor.  This is Mr. Jackson.  And I apologize for
20    overburdening the Court.  We certainly didn't expect
21    the Court to read every page.
22                    I think the point that we were trying
23    to make was that the production is very voluminous
24    and therefore what they're essentially requiring us
```

Page 5

1   to do is to manually re-enter every one of those

2   transactions that were in those pages to recreate an

3   electronic version of that so that our experts can

4   do their analysis of their sales records.

5              And it wasn't intentional, as I say,

6   to try to burden the Court.  That certainly was not

7   our objective because that was not the point.  We

8   were not making it a point that Your Honor needed to

9   read these; at most, you know, just perusing the

10  first few pages.

11             And perhaps we should have said that

12  in the letter, Your Honor.  We were tight on space.

13  But it didn't occur to me, at least until certainly

14  after the filing had been made, that perhaps we

15  should have made that notation.  So, Your Honor, I

16  apologize for that.  That was not our intention at

17  all.

18             THE COURT:  Very well.  And I thank

19  you for correcting it after I entered the oral

20  order.  You did trim it down.  But, nonetheless,

21  again, I understand now the point that you were

22  trying to make.  But when I first read and then read

23  several times thereafter your initial letter brief

24  on the relief that's being sought by PerDiem, there

1   were no specific citations to any specific pages,

2   even in the paired-down version attached as an

3   exhibit, to demonstrate to the Court why the

4   information contained in those voluminous pages was

5   not sufficient for the plaintiff's needs.

6              And if you're going to attach that

7   volume of documents as exhibits to a request for

8   relief in a motion to compel, I would expect some

9   connecting of the dots, so to speak, to demonstrate

10  or be representative of the deficiencies that you're

11  saying exist and that the Court needs to correct.

12             Based on what you've told me then,

13  your client's issue with the 8,800-page production

14  is more in the nature of a formatting issue than a

15  content issue.  Am I correct in understanding that?

16             MR. JACKSON:  Your Honor, if I could,

17  this really gets into our first issue that we

18  briefed.  But really we don't want to have to go

19  through the documents, whether they be electronic or

20  pdf, as they were produced to us originally.  We

21  want an answer to the interrogatory.

22             And the reason, again, for getting

23  into the issue about there being so voluminous is

24  even if we were to rely on the documents, which we

Page 7

1   don't think is appropriate in answering

2   Interrogatory No. 4, even if we were to get into it,

3   there is a huge burden associated with that and

4   therefore Rule 33(d) is improper.

5              And then, finally, we do make the

6   point in our letter brief that even if you look at

7   those documents, okay, they still don't answer the

8   interrogatory because they don't get into costs and

9   profits.

10              CalAmp has argued that costs and

11   profits are totally irrelevant to a reasonable

12   royalty analysis, but that's clearly not correct

13   under the controlling case law.

14              The primary case, you know, relied

15   upon by virtually every court, at least as a

16   starting point, is the Georgia-Pacific case, 318

17   F. Supp. 1116; and in there the Court lays out that

18   Factor 8 is "The established profitability of the

19   product made under the patent..."  So clearly

20   profits are relevant.

21              So it's a layered argument, Your

22   Honor.  We don't think it's appropriate to rely on

23   Rule 33(d).  We just want an answer to the

24   interrogatory.  It's fairly straightforward and they

Page 8

1   can extract that information from their database.

2                   In fact, we had one of their

3   witnesses, Mr. Agrawal, testify that he can identify

4   at least units by going in and running queries in

5   the CTC, which he is the program manager for, and

6   that he does that from time to time to identify the

7   number of units.  So we want that answer, frankly.

8                   But if we get into the documents, the

9   burden is not equal, as evidenced by their

10  production; and even if you do look at the

11  documents, it still doesn't fully answer the

12  interrogatory.  So that's basically the entirety of

13  the argument, I think, in a nutshell at least.

14                  THE COURT:  All right.  Well, let's

15  work through it.

16                  The document response you say does

17  not respond, first of all, to the request for

18  information in Interrogatory No. 4 for costs and

19  profits.  And you have provided a copy of the

20  interrogatory and their response.  But, again, I

21  mean, you've gone to two extremes in your exhibits

22  on behalf of PerDiem in this case.

23                  The one extreme is the entirety of a

24  production of 8,800 documents for making a point

Page 9

1   that could have been articulated in a letter brief

2   without doing that.

3              Secondly, with respect to the

4   remaining requests, whether they be in

5   interrogatories or requests for production, that

6   will follow the issue concerning the Interrogatory

7   No. 4, you have not provided the Court with the

8   actual set of responses to the requests for

9   production and/or interrogatories on which you are

10  seeking relief in this case.

11             That puts the Court in a very

12  difficult position because obviously discovery is

13  not filed on the docket.  If you don't provide me

14  with a particular interrogatory or request for

15  production and the other side's response, it's very

16  hard for the Court to get a sense of what's going on

17  because each side is putting their advocacy into it

18  and the Court can't see it for itself.

19             But putting that aside for the

20  moment, you argue on behalf of PerDiem that the

21  interrogatory asks for costs and profits, as you've

22  said on this call; but did not put in your moving

23  submission, you base it off of the Georgia-Pacific

24  factors, particularly Factor No. 8 -- and the Court

 1   is certainly aware of the Georgia-Pacific analysis

 2   and the factors behind it -- but, nonetheless, it's

 3   your burden as the movant to make and support a

 4   legal argument and there's absolutely no indication

 5   in this letter brief of what point you're trying to

 6   make and what authority you have for it.

 7              All you're saying is:  We asked for

 8   it in Interrogatory No. 4.  Even with this

 9   8,800-page production we didn't get it and we want

10   it.  Compel it.

11              That doesn't go the distance on the

12   Court's ability to afford you the relief that you

13   need, particularly when I'm hearing from the other

14   side in their opposition that it's not relevant; you

15   haven't explained how it's relevant; and there is a

16   wealth of information in the documents that were

17   produced that it's up to you as the requesting party

18   to go through and use the discovery you get in the

19   manner that suits your strategy or purposes or the

20   way you work with this type of information behind

21   the scenes as the party with the burden of proof.

22   It's not up to them to spoonfeed it in a fashion

23   that is most user friendly.

24              So I'm getting these arguments on

Page 11

```
 1   both sides without a well-developed argument under
 2   Rule 26 on relevance and proportionality in
 3   reference to the Georgia-Pacific analysis.
 4                    MR. JACKSON:  Your Honor, this is
 5   Mr. Jackson.
 6                    So to be quite honest with you, we
 7   kind of, I think, presumed the relevance of, you
 8   know, units and dollars and revenue and costs and
 9   profits associated with the accused products as
10   being something that certainly CalAmp is very
11   familiar with being experienced patent attorneys.
12                    THE COURT:  That's not the point.
13   The point is you're making these generalized, broad,
14   blanket requests without tying them into anything
15   that's been produced in discovery other than on a
16   large-scale basis.  And you're not getting into
17   what's deficient, how it's deficient, what you're
18   looking for, and what the Court can do to fix it for
19   PerDiem.
20                    These are overbroad, overgeneralized
21   requests.  As you see, I mean, you've made the point
22   that I'm making by showing me 8,800 pages of
23   documents.  Now, where and how and what are you
24   asking the Court to do?
```

```
 1              MR. JACKSON:  Your Honor, we're
 2   asking the Court to compel a full response to
 3   Interrogatory No. 4, which we restated here in our
 4   discovery letter at the bottom of Page 1 to the top
 5   of Page 2, and just to extract the key parts, which
 6   we focused on in the letter brief:  the sales
 7   volume of the accused products; the number of units
 8   of those products that are tracked and monitored by
 9   CalAmp's systems; the revenue, costs, and profits
10   associated with those services and products that are
11   tracked, and services provided by CalAmp.  That's
12   what we're asking the Court to order CalAmp to
13   provide.
14              THE COURT:  Just by way of example,
15   what the Court is seeing in the exhibits that were
16   produced, just taking one page out of the 8,800,
17   this is Page 2 of 3,890 at Document Item 93-1, it
18   gives a spreadsheet type or columns of information
19   that includes invoice date, invoice number, part
20   number, description, unit price, quantity shipped,
21   and revenue.
22              And CalAmp is saying of the multiple
23   voluminous pages of that information that you've
24   received, the plaintiff can do the calculations and
```

Page 13

 1   therefore its production in response to the
 2   interrogatory by reference and reliance on 33(d) to
 3   produce documents in lieu of a narrative is
 4   sufficient to answer that interrogatory.  You
 5   haven't shown me how it isn't.
 6               MR. JACKSON:  Your Honor, I think
 7   that we respectfully disagree.  I think we have by
 8   showing you the documents that they are relying on
 9   for their response and how voluminous those are.
10               I mean, you know, in the way these
11   documents were originally produced, I know that
12   CalAmp has now said that they've reproduced these
13   electronically.  We did receive electronic
14   spreadsheets.  I have not and I don't think anybody
15   on our team has had the time to go through and
16   compare the two sets of production to see if, in
17   fact, they are the same.  But for the time being
18   let's assume they are the same.
19               There are multiple, different I think
20   they're called part numbers, for example, in this
21   set of documents; and while there is a description
22   field, there are multiple part numbers that
23   correspond with the same descriptions.
24               And then there are descriptions of

Page 14

1    products in these documents that don't line up with

2    any of the names in the accused instrumentalities as

3    we understand them.

4                    And so it becomes impossible to know

5    how to group these numbers together even if you had

6    them in electronic format such that you could total

7    them up and come up with the number of units and

8    dollars on a month-by-month basis for these accused

9    instrumentalities.

10                   So if the burden is not equal as

11   between the parties to ascertain the information,

12   then Rule 33(d) is improper, and that's what they

13   have here.

14                   They certainly have access to this

15   financial data -- I think they use an Oracle

16   database -- in their database.  They can -- and I'm

17   quite sure that they do -- run reports at least on a

18   monthly, if not a quarterly, basis because they have

19   to make SEC filings on a quarterly basis.

20                   They have these numbers or can easily

21   pull them out, much more easily than we can extract,

22   you know, who knows what information from all of

23   these pages with these differing part numbers and

24   differing descriptions that don't always align with

Page 15

1    the accused instrumentalities.

2                   And so reliance on Rule 33(d) is

3    improper and here we're simply asking for a

4    straightforward answer to the interrogatory.  If

5    they would like to put it in a chart format, that's

6    certainly fine.  We don't have an objection to

7    putting it in a chart format.

8                   But for each month we would like to

9    have the number of units tracked, the revenues

10   associated with those, and the costs and profits

11   associated with those for the period of alleged

12   infringement.

13                  THE COURT:  So the electronic

14   spreadsheets that have been produced by CalAmp that

15   you referred to, they were also identified in

16   CalAmp's responsive submission.  I take it those

17   were produced before you submitted this letter on

18   October 20?

19                  MR. JACKSON:  Your Honor, there were

20   several hundreds of documents.  I don't know the

21   exact number, but there were several hundreds.

22   Those were produced to us after hours Wednesday

23   evening before this letter brief was due on

24   Thursday.

Page 16

1          So, you know, certainly we were

2    working on the letter brief and, you know, have not

3    had a chance to go through and spend any time

4    examining those documents in detail.

5          But I will also point out, Your

6    Honor, that even their letter brief acknowledges

7    that even if you look at the information they

8    provided, that it still will not provide you an

9    answer to this interrogatory because on I think it

10   is Page 2, in the second full paragraph, in the

11   middle of the page, at the end CalAmp says:  "If

12   PerDiem did not understand some of those

13   'descriptions,' it could have asked a followup

14   interrogatory or sought this information in a

15   deposition."

16         So they're acknowledging that even

17   what they provided, whether it be the original pdf

18   version or what they've now provided as electronic

19   files, that those are not going to answer the

20   interrogatory for us and therefore, again, Rule

21   33(d) is not a proper mechanism of answering this

22   interrogatory.

23              THE COURT:  And where is your

24   authority for that?

Page 17

1              MR. JACKSON:  Well, it's right in

2    Rule 33(d).  Rule 33(d) says that the burden has to

3    be, in effect -- I'm just looking here, I happen to

4    be looking at their letter, but they quote in

5    relevant part on Page 2 of their letter Rule 33(d):

6    that you can rely on business records "...if the

7    burden of deriving or ascertaining the answer will

8    be substantially the same for either party..."  And

9    so here clearly that's not the case, and they

10   essentially acknowledge that.

11             THE COURT:  If they say this is the

12   way it's maintained in the ordinary course of

13   business, doesn't that fulfill that requirement?

14   That if this is the way the records are normally

15   kept, then ascertaining the answer is substantially

16   the same for either party; isn't that correct?

17             MR. JACKSON:  No, Your Honor, in this

18   case it's not because, as I say, the codes that they

19   use or the part numbers that they use don't align,

20   the descriptions don't align, one to one easily with

21   the names of the accused instrumentalities, you

22   know, the public versions at least of the accused

23   instrumentalities that we're aware of and that we

24   have accused of infringement in the infringement

Page 18

1    contentions.

2              So it requires some additional

3    knowledge beyond what's included in these documents

4    to understand what the part numbers mean and what

5    the descriptions mean and how they correspond to the

6    accused instrumentalities in this case.

7              And the other thing, too, is they

8    don't maintain these documents in this pdf version

9    as during the meet-and-confer process they confirmed

10   that, as I said, they use an Oracle accounting

11   system, for lack of a better term, that relies on

12   the database to store the information.

13             So the information is stored in a

14   database and that information has to be exported in

15   some format, and originally they exported it in pdf

16   and that was the information we had leading up to

17   this briefing.

18             THE COURT:  All right.  Anything else

19   before I hear from CalAmp on this issue?

20             MR. JACKSON:  Not at the present

21   time, Your Honor.

22             THE COURT:  All right.

23             Let me hear from CalAmp.  Address the

24   Oracle accounting system database that's been

Page 19

1    referenced; address the issue concerning the

2    nonalignment of the part numbers, the descriptions,

3    and the inability of the plaintiff to correlate what

4    it is this information that has been provided in the

5    voluminous production is calculated to show; and

6    address the costs and profits issue and how the

7    plaintiff should or should not have information

8    relating to costs and profits.

9                    MR. LARSON:  Yes.  Thank you, Your

10   Honor.  This is Joshua Larson for CalAmp.

11                   And, Your Honor, I do want to

12   clarify.  So the information is maintained in an

13   Oracle database natively by CalAmp.  That's how it

14   tracks its sales information.

15                   I don't believe that PerDiem is

16   asking for the information in that format.  I don't

17   think that would be accessible to them.  In their

18   request to us as well as their letter brief they

19   have asked that that information be produced in an

20   Excel spreadsheet format.

21                   And while the parties have some

22   disagreement about that, we have been trying to

23   minimize the issues for the Court and did agree to

24   produce that information to them in that format and

Page 20

1    we have produced that information to them last

2    Wednesday at 4:30 p.m.  So, Your Honor, they have

3    those spreadsheets.

4                 As mentioned in our brief, we believe

5    those spreadsheets are entirely sufficient under

6    Rule 33(d) to put the parties on a level playing

7    field in terms of deriving information or finding

8    information on those spreadsheets.  That's the very

9    same data that CalAmp maintains in the ordinary

10   course of business.

11                There are, as Your Honor noted,

12   several fields that have been produced, including

13   things like dates and unit prices, unit numbers,

14   total revenues, from those products that can now,

15   especially in spreadsheet form, be organized however

16   PerDiem would like to try to compile that

17   information to suit its case.  But it has the

18   ability to do that just as easily as CalAmp does.

19                In addition, there are descriptions

20   of the products that are used.  As Your Honor

21   pointed out, on Page 2 it lists Fleet Outlook, which

22   is one of the accused products.  And many of the

23   other descriptions as well use the accused product

24   names.

Page 21

1              Additionally, some of the sales
2     information that was produced is subscription
3     services, which don't necessarily have an accused
4     product name in them but are part of the services
5     that PerDiem has asked for sales information on and
6     we've produced.
7              So the information is there, Your
8     Honor, for PerDiem to be able to sort and use
9     however it likes by itself or with its expert.  And
10    it's organized as it's kept in the ordinary course
11    of business.
12             There are also part numbers included.
13    Those are the same part numbers that are stored in
14    the database.  There has been no change in that data
15    or anything on CalAmp's part in the export process.
16             The last item, you know, is the costs
17    and profits, and we haven't heard an explanation of
18    that relevance, particularly before today.  We've
19    objected to that information as being not relevant
20    to the case.
21             Today we heard that plaintiffs are
22    relying on Georgia-Pacific Factor No. 8 in their
23    argument and, Your Honor, we don't believe that that
24    shows the relevance of the information.

Page 22

```
 1              Georgia-Pacific Factor No. 8 is "The
 2    established profitability of the product made under
 3    the patent..."  That's referring to the patentee's
 4    own product and the profits that they derive from
 5    that and how that can be taken into account in the
 6    hypothetical negotiation under the Georgia-Pacific
 7    factors.
 8              So we would submit, Your Honor, that
 9    that Factor No. 8 does not show that CalAmp's
10    profits or costs are relevant at all to the
11    reasonable royalty in this case.
12              And so in that sense, Your Honor, we
13    believe that our interrogatory answer relying on
14    Rule 33(d) is sufficient and that we've provided the
15    information to PerDiem that it's entitled to under
16    this Interrogatory No. 4 and would ask that Your
17    Honor deny the request to compel.
18              THE COURT:  All right.  I'll hear
19    PerDiem's response.
20              MR. JACKSON:  Yes, Your Honor.  This
21    is Mr. Jackson again.
22              So they only raised the relevance in
23    their letter for the first time.  You know,
24    obviously we have not had a chance to respond.
```

Page 23

1            We think that the number of units of

2     the accused instrumentalities and the financial

3     information associated with those is a foundational

4     piece of discovery in every patent case that I've

5     ever been involved in and expect to be involved in

6     for the rest of my career.

7            So it's somewhat, you know, beyond

8     really the pale to make an argument about this

9     information not being relevant.  It is relevant in

10    every case.

11           Our damages expert will be criticized

12    if he doesn't analyze the profitability of their

13    products and obviously he or she has to be able to

14    tabulate the number of units and so forth to do the

15    analysis.

16           This is foundational discovery and,

17    as I say, we simply, you know, keep focusing on the

18    documents, on the documents, because that's where

19    CalAmp has been pointing us.  But we just want an

20    answer to the interrogatory, a written interrogatory

21    response.

22           If we need to resort to the documents

23    to check their numbers or whatever, perhaps we can

24    do that.  But I have not heard an explanation -- let

Page 24

1    me, before I finish there, back up and just say that

2    I did receive just now a summary, not of the

3    entirety of the production, but the descriptions

4    associated with the entries in their electronic

5    files which were produced, you know, late on

6    Wednesday.

7               THE COURT:  You know what?  I

8    appreciate your wanting to update the Court.  I do.

9    But that's not how I conduct discovery disputes.

10              These are matters -- and we talked

11   about this in the July 14 conference -- where the

12   Court is not going to indulge a disconnect between

13   the parties on the effectiveness of the

14   meet-and-confer process.

15              While it is, you know, concerning to

16   the Court that there's a discovery dispute teed up

17   and documents are produced on the eve of when the

18   letter briefing is set to begin, nonetheless, you

19   now have electronic spreadsheets produced from the

20   other side that I'm hearing is as user friendly to

21   you as it is to them, so the burden or the playing

22   field is equal such that it is an appropriate

23   response under Federal Rule 33(d).

24              The parties have not talked about

Page 25

1   that.  If there are defects in PerDiem's view with

2   that production and the problems still remain, I'm

3   entertaining on this call, again, not vetted through

4   the meet-and-confer process, a robust argument on

5   the applicability, if any, of the eighth factor in

6   the Georgia-Pacific analysis, none of which has been

7   briefed by this side, the PerDiem side, which has

8   the burden of persuasion on a motion to compel.

9              I'm not going to conduct discovery

10  conferences like this.  The parties have to meet and

11  confer.  You have to give me discrete issues to

12  resolve and not talk to me on a very high level in

13  very, very general terms that this is what patent

14  litigation is about and this is the type of

15  discovery.

16             I know what patent litigation is

17  about.  I know what kind of discovery requests are

18  involved because I handle hundreds and hundreds of

19  discovery disputes.  I've had two disputes a day

20  going forward this week and that will be the case

21  throughout the remainder of the week.  So I am quite

22  familiar.

23             But my requirements are that

24  discovery requests for relief when disputes are teed

Page 26

1    up for me are targeted, specific, and focused; and

2    this one is not.

3                    So let's not talk about the

4    electronic spreadsheets until PerDiem has had an

5    opportunity to go through them and if there are

6    deficiencies with them, I don't expect that the

7    production in its entirety will be dumped in the lap

8    of the Court for the next discovery dispute.  I

9    expect that representative pages will be singled out

10   with specific concrete examples that are mentioned

11   in the letter briefing and specifically pincited to

12   the exhibit so I can cross-reference where the

13   exhibit is that's being referred to and that's how

14   the discovery disputes will proceed.

15                   So I don't want to talk about

16   electronic spreadsheets.  I don't want to get into a

17   Georgia-Pacific argument that's not been briefed.

18   So do you have anything else on this issue?

19                   MR. JACKSON:  Nothing further, Your

20   Honor.

21                   THE COURT:  All right.  I will rule

22   from the bench that the Motion to Compel a

23   Supplemental Response in Narrative Fashion to

24   Interrogatory No. 4 is denied for the reasons that

Page 27

1   have been articulated on this record.

2            To summarize them, the Court has been

3   presented with a volume of documents and a lack of

4   specific identification of where in those documents

5   the deficiencies appear.

6            And even during the course of this

7   discussion there has been a more recent production

8   in electronic spreadsheet format which PerDiem has

9   not yet had the opportunity to review and the Court

10  has to assume from what I'm hearing from CalAmp that

11  those documents may go a long way in resolving many

12  of the issues at the heart of this dispute over

13  Interrogatory No. 4.

14            On the record made today, the Court

15  is not inclined to say that it was an improper

16  production under Rule 33(d) and a narrative response

17  is required.  Again, the electronic spreadsheets

18  provide the same information to the plaintiff as the

19  defendant keeps in the ordinary course of business

20  from what I'm hearing from CalAmp.

21            To the extent there is an argument

22  that costs and profits information is still missing

23  from the more recent production of the electronic

24  spreadsheets, then that is an issue for another day

Page 28

1   to be properly discussed in a meet-and-confer and to

2   be properly brought before the Court with specific

3   and targeted identification of the deficiencies, of

4   why the information is relevant to the claims that

5   have been asserted by PerDiem in this case, and a

6   request for specific and targeted relief should be

7   provided in the form of order that goes with the

8   request for relief by the movant.

9            So that is my ruling.  The parties

10  are free to take objections to the District Court of

11  this and any other rulings I make from the bench

12  today.  The transcript will serve as the Order of

13  the Court.  I will not be writing a lengthy

14  memorandum opinion on the issues addressed today.

15  And Judge Williams will review my rulings under Rule

16  72(a) to determine whether they're clearly erroneous

17  or contrary to law.

18           So now let's move on to Issue No. 2

19  concerning the previously ordered document

20  production that was addressed at the July 14

21  teleconference.  You may proceed, Mr. Jackson.

22           MR. JACKSON:  Thank you, Your Honor.

23           So I want to go back even before that

24  July 14 hearing to put this in context because I

Page 29

1    think that, as I've re-read CalAmp's letter brief on

2    this issue, it takes things out of context.

3              On July 1 -- and, unfortunately,

4    again, you know, this letter is not attached, but if

5    we were to file a reply, I certainly would attach

6    it, but -- there is a letter from CalAmp's counsel

7    where they say -- and I'm going to paraphrase

8    here -- they've reviewed our June 24, 2022,

9    supplemental infringement contentions and that based

10   on those -- and I'll quote this part -- "...CalAmp

11   is prepared to produce non-objectionable and

12   relevant discovery for the following products," and

13   then CalAmp lists eight products.  And some of them

14   are product categories because they are subproducts

15   that are listed in their letter.

16             So that statement was not contingent

17   upon there being a particular category of documents

18   that they would agree to produce.  They were just

19   saying we agree, these products are at issue and

20   we'll provide discovery for those products.

21             So then fast-forward to July 11,

22   2022, this is our letter brief to Your Honor, and

23   then the July 12 responsive letter from CalAmp, in

24   there we still believed and we argued that the scope

Page 30

1   of the discovery should be beyond those eight

2   product categories that they listed in their letter.

3   Your Honor disagreed with us, and that's fine.

4                    In the interim since then, I think

5   we've hammered out with CalAmp that the eight that

6   they listed there -- somebody on this call can

7   correct me if I'm wrong, but I think that the eight

8   that are listed there -- are the appropriate

9   products for discovery based on additional

10  information that was provided during various

11  meet-and-confers.  So that was the context.

12                   And then in the briefing there were

13  actually four issues that we raised, Your Honor:

14  the first one being the list of appropriate

15  products for discovery; and then Issue No. 2 was

16  settlement and license agreements; Issue No. 3 was

17  specific technical documents, and we referenced the

18  API documents and GUI documents; and then there was

19  a fourth issue relating to a subsidiary of CalAmp's

20  and whether discovery there was appropriate.

21                   That particular argument isn't really

22  relevant to my discussion here today.  It really has

23  to do with these first three issues.

24                   In CalAmp's responsive letter brief

Page 31

```
1    they didn't treat each of those issues separately.
2    They lumped them all in together.  And in their
3    letter brief they say -- and, Your Honor, at the
4    discovery hearing on July 14 Your Honor made this
5    statement part of your order, but they say in their
6    letter brief -- that "CalAmp has already agreed to
7    produce discovery (including the settlement and
8    license agreements, APIs, and GUIs discussed in
9    PerDiem's July 11 letter) for the following
10   products," and then they list those same eight
11   products in their letter to Your Honor.
12                    So instead of treating those three
13   categories and three issues separately, they just
14   sort of put them all into one sentence.
15                    And then Your Honor in your oral
16   order, and I won't repeat it, but basically, you
17   know, you restate their agreement, what they've
18   agreed to here, and that's on Pages 43 and 44 of the
19   hearing transcript.  It starts on the bottom of 43
20   and goes to the top of 44.
21                    So that was the background/the
22   context of Your Honor's order.  And now what CalAmp
23   seems to be arguing is that they only agreed to
24   provide the settlement and license agreements and
```

Page 32

1   the GUI and API documents for those eight products.

2                     As I say, that completely takes what

3   happened leading up to the July 14 discovery hearing

4   completely out of context.  Those were three

5   separate categories.  And Your Honor ordered them to

6   provide discovery on those eight products and

7   provide the GUI and API products and provide the

8   settlement and license agreements, which we still

9   don't have all of those either.

10                    In CalAmp's letter they say they're

11  seeking permission from other parties to produce, I

12  don't remember if they gave a number or whether

13  there was a reference to just a handful of other

14  settlement agreements, but we think we're missing

15  way more than a handful of settlement and license

16  agreements with CalAmp.

17                    But, nonetheless, the core issue was

18  that those were three separate categories and so

19  Your Honor indicating and repeating, frankly, their

20  statement of what they've agreed to provide is not

21  limited to just those settlement and license

22  agreements, API, and GUI documents.

23                    In fact, the language in CalAmp's

24  letter, which was also included in Your Honor's

Page 33

1   order, is you are providing discovery including

2   those documents for the following products.  So it

3   certainly wasn't limited to those three categories

4   of documents, as CalAmp is now essentially arguing.

5              And so we simply want Your Honor to

6   order them, as they agreed and as we think Your

7   Honor also indicated, to provide production,

8   generally discovery, not limited to certain

9   categories, for all those products.

10             If there are certain RFPs or

11  what-have-you that they want to raise objections to,

12  we can deal with those subsequent to this call.

13  That's not the issue.  The issue is what is the

14  overall scope of discovery here.  They're trying to

15  reconstrue Your Honor's order and their letter by

16  extension as being limited to those two categories.

17             You know, I think we mentioned this

18  in the July 14 letter, we have yet to receive the

19  first business plans or other business-related

20  documents from CalAmp, nothing that's truly

21  internal.  When I say "internal," I mean limited to

22  employees of CalAmp, per se.

23             I know that we were criticized for

24  using language like "limited to CalAmp" in CalAmp's

Page 34

 1    letter brief.  But what we mean by that is documents

 2    that nobody outside of CalAmp has seen.  Everything

 3    that they have provided to us has been either

 4    available on publicly available developer websites

 5    or they had a developer website that requires a

 6    password to get access to.  We think some of their

 7    API and GUI documents came from one of those

 8    websites as well.

 9             But we have not received business

10    plans and pricing analyses and reports related to

11    the accused products and so forth, the kind of

12    things that are typically generated by businesses

13    that are tracking how their products are doing and

14    so forth, at least on a quarterly basis, but

15    typically on a monthly basis.  So none of those

16    documents we've received at all, none.

17             And so there clearly is a disconnect

18    between what we thought Your Honor ordered and the

19    way we certainly read Your Honor's order as well as

20    their letter, all the way going back to their July 1

21    letter, where they didn't condition their agreement

22    to provide discovery on the eight products based on

23    or limited to any certain subcategories of

24    documents.  It was just broad, we're going to

Page 35

1    provide discovery.

2              And that's essentially what we're

3    asking Your Honor to order, is that the discovery

4    needs to be more than just these settlement and

5    license agreements, API documents, and GUI

6    documents.

7              THE COURT:  All right.  Well, again,

8    you're capturing quite a broad area of discovery.

9    You're not identifying the specific requests.

10   You're going back to the order that I entered on a

11   transcript of the July 14 hearing, which, by the

12   way, we had to request that transcript because it

13   was not attached as an exhibit.  You've listed and

14   described in very general fashion the number and

15   types of documents that were produced but haven't

16   detailed in your letter briefing how that does not

17   conform or comply with a prior court order.  You're

18   all over the map on this argument orally today.

19              Again, you're making it very

20   difficult for the Court to assess specifically what

21   requests, what production, how it's deficient.

22   These are all just really generalized beefs about

23   what has been produced so far and the way it's been

24   produced and not really substantively in terms of

Page 36

```
 1   the content what the Court can do to fix it and what
 2   specific request this Court can focus on to have
 3   them supplement.
 4              So I have to say, it's not very
 5   helpful argument, nor has the letter briefing been
 6   very helpful.  But I understand, I entered an order
 7   out there, the order says what it says, and you're
 8   saying there has not been full compliance.  So let
 9   me hear from CalAmp on that.
10              MR. LARSON:  Yes.  Thank you, Your
11   Honor.  Joshua Larson for CalAmp.
12              Yes, Your Honor, we disagree with the
13   arguments presented by PerDiem and it's a bit hard
14   to respond to what they're asking for since it isn't
15   very clear.
16              But I'll note for the Court that
17   we've made objections which we believe are
18   meritorious on many of their requests for production
19   and we stand by those objections.  I don't think
20   we've been challenged on most of those or had the
21   opportunity to discuss those with PerDiem if they
22   disagree with them.
23              But we have made objections to their
24   RFPs, Your Honor, and we have produced documents in
```

Page 37

```
 1    response to the RFPs to the portions that we didn't
 2    object to, which is many of those RFPs.
 3                   Our letter brief does focus quite a
 4    bit on the previous discovery hearing since that is
 5    how PerDiem framed the issue in dispute in their
 6    letter brief and, Your Honor, we do believe that we
 7    have fully complied both with our agreement and with
 8    the Court's order out of that previous discovery
 9    hearing.
10                   PerDiem had raised several categories
11    of documents that it believed it was entitled to:
12    specifically, settlement and license agreements;
13    documents related to our APIs, application
14    programming interfaces, and graphical user
15    interfaces or GUI.
16                   As stated in our letter brief, that
17    information has been produced, as we said we would,
18    on a rolling basis over the last several months.
19                   The only exception -- and I know this
20    is a question plaintiff had -- was some of the
21    settlement and license agreements where we have
22    contractual obligations to check with third parties
23    prior to production.
24                   We have done that.  There are two
```

Page 38

1   outstanding and we have sent those letters as

2   required by those agreements to the parties.  So we

3   expect to hear back from them in the next several

4   weeks if they do have any objections that they plan

5   to raise with the Court and, if not, we'll be

6   producing those documents under the protective order

7   as well.

8                    THE COURT:  All right.  Let me turn

9   it back to Mr. Jackson.  In looking at Page 3 of 7

10   of PerDiem's opening letter submission, the

11   paragraph seemed to be devoted to complaints that

12   CalAmp has not produced a single internal document

13   that shows how the accused services are positioned

14   for execution.  And, again, it's stated in two

15   paragraphs later that none of the documents produced

16   by CalAmp have been internal documents.

17                    Internal documents are not defined.

18   I understand from your argument that you're speaking

19   about documents that have not been shared with

20   anyone outside of CalAmp.

21                    But you haven't explained how

22   documents, to the extent they are provided to third

23   parties, would not be, nonetheless, responsive to

24   the information that you've itemized:  business

Page 39

1   plans, sales projections, development documents,

2   technical specifications; how the only type of

3   documents that could possibly be responsive to that

4   are internal and what CalAmp has produced thus far

5   is not responsive.

6            So I am not sure I can follow that

7   argument.  Maybe you can provide a little bit more

8   information on that.

9            MR. JACKSON:  Yes, Your Honor.  So, I

10  mean, they just made the point that they provided no

11  internal documentation.  But whether the documents

12  are internal -- that is, not disclosed outside of

13  CalAmp -- or not, we don't have any of these

14  categories of documents that we listed here on Page

15  3 of our letter brief to Your Honor.

16            You know, to the extent that specific

17  RFPs are mentioned, in this letter we didn't point

18  to specific ones because it's really a preliminary

19  issue before we get into objections to RFPs,

20  specific ones and so forth.

21            And so it's not an imprecise issue.

22  It is a precise issue.  The issue is whether they

23  need to provide discovery for all of these products

24  or whether they are limited to providing discovery

Page 40

1    in response to the particular categories that we

2    raised at the July discovery hearing in the Issues

3    No. 2 and 3.

4                And, by the way, our letter of

5    July 11 leading up to that discovery hearing does

6    list many of the RFPs that apply to these categories

7    of documents that we call out here in our October 20

8    letter.

9                But it's really a preliminary issue

10   of whether Your Honor's order, which says, you know,

11   they've got to provide discovery for these products

12   and that discovery has to include the documents we

13   want in Issues No. 2 and 3 back in July, whether

14   that word "including" can properly be rewritten to

15   mean limited to.

16               And that's the way CalAmp is arguing

17   this issue to Your Honor in their letter and, again,

18   here on the call effectively and that's not what

19   Your Honor's order said and it's not what CalAmp

20   agreed to provide either.

21               MR. LARSON:  Your Honor, this is

22   Joshua Larson.  May I make one brief point?

23               THE COURT:  Yes.

24               MR. LARSON:  Thank, you, Your Honor.

Page 41

1             I just want to clarify for the

2    record, I realize I didn't respond to this the first

3    time around, but I do want to clarify that we have

4    made production beyond just the documents described

5    as settlement agreements, APIs, and GUIs.  I know we

6    focused on that today, but I do want to make clear

7    that CalAmp has produced many more documents in this

8    case, including some of the documents that they've

9    listed.

10            So I just want to note that we do

11   disagree that CalAmp hasn't produced any development

12   documents or specifications or user guides or

13   third-party development agreements, and so on.  We

14   have produced a number of those documents.

15            Additionally, some of the categories

16   of documents here that they've listed we do disagree

17   and we've objected to the relevance and producing

18   those on other reasons.  But, again, we don't have

19   any explanation from PerDiem of why it believes it's

20   entitled to those documents over our objections.

21            Thank you, Your Honor.

22            THE COURT:  All right.  On this

23   request I am going to deny the motion to compel.

24   It's not properly before the Court.

Page 42

1              When I have one party telling me that
2      there is a complete lack of production as to just,
3      for example, without repeating the whole complete
4      list, business plans, sales projections, product
5      road maps, development documents, technical
6      specifications, et cetera, et cetera -- I'm reading
7      from Page 3 of 7 of Document Item 91, which was
8      PerDiem's moving submission -- and I have CalAmp, on
9      the other hand, telling me that, no, all of these
10     were produced and to the extent they were not, we
11     have a reasonable objection under the Federal Rules
12     of Civil Procedure to its relevance and/or
13     proportionality, and there's absolutely no record to
14     develop that before the Court so that I can decide
15     which party has the better argument, the burden of
16     proof has not been carried by PerDiem to show the
17     Court that, number one, there has been a lack of
18     compliance with a prior court order; and, number
19     two, there are specific requests for production
20     among the aggregate of 82 requests for production
21     that were served on CalAmp for which CalAmp has been
22     deficient in responding.
23              So for those reasons the motion to
24     compel is denied without prejudice.  And to the

Page 43

 1   extent there are production deficiencies, I need to

 2   see the parties meet and confer on these.  I need to

 3   see that a letter is being sent over to the opposing

 4   party outlining and confirming the deficiencies that

 5   were raised and how the parties compromised or did

 6   not compromise on those deficiencies.

 7              And at that point, if there is still

 8   an outstanding dispute for which the Court is in a

 9   position to fashion relief, I will hear the dispute.

10   But just with these general, blanket requests and

11   just simple representations in the letter briefing

12   without more, the Court has no way of discerning

13   whether something was or was not produced to the

14   extent the requesting party is demanding production.

15              So I just can't grant the relief, the

16   blanket relief, that has been sought.  If there was

17   not compliance with an order of the Court, there is

18   always relief under Rule 37 for failure to comply

19   with a court order.

20              I'm not inviting practice under Rule

21   37.  But the rules of procedure are there to assist

22   the parties in working these out, attempting to work

23   them out, amongst themselves before coming to the

24   Court without a sufficient record for the Court to

Page 44

```
 1   resolve the dispute.  So it's denied without

 2   prejudice.

 3               I think that brings us to the next

 4   issue, which are Interrogatories 14 and 15.  But

 5   I'll defer to Mr. Jackson on whether I have passed

 6   over any other issues.  Some of these overlap.

 7               MR. JACKSON:  Thank you, Your Honor.

 8   If I could make one point on the prior issue, if

 9   nothing else, just to put it on the record, Your

10   Honor?

11               THE COURT:  Go ahead.

12               MR. JACKSON:  Okay.  Thank you, Your

13   Honor.

14               In my declaration I did, in

15   Paragraphs 13 and 14, itemize for the Court the

16   specific contents of their productions that have

17   been made since the July 14 discovery hearing and I

18   was as specific as I could be, you know; for

19   example, identifying nondisclosure agreements with

20   Distrax and certain sales quotes they provided, and

21   then the API documents which Mr. Larson acknowledged

22   that they produced.  Those are all itemized in those

23   two paragraphs.  So I do think there's a record

24   there for Your Honor to see what was produced and
```

Page 45

 1    therefore by implication what wasn't produced.

 2                   And, Your Honor, also I was

 3    wondering -- and maybe this is the issue and, if so,

 4    please just let me know, but -- is it possible for

 5    Your Honor to clarify what was intended in the

 6    July 14 hearing transcript at the bottom of 43 and

 7    top of 44?  Was Your Honor's order limited to the

 8    API, GUI, and settlement and license agreements or

 9    was it more broad than that?

10                   THE COURT:  The order speaks for

11    itself and without re-reading the submissions that

12    were before me that led to that order, I'm not in a

13    position to go back and reconsider or refine that

14    order.  It's up to PerDiem to show me.

15                   And I do acknowledge that you put it

16    in your declaration and to some extent you

17    summarized it in your letter brief, I don't dispute

18    that; but the problem is telling me what they

19    produced and what's lacking, you know, on the one

20    hand, and, on the other hand, having CalAmp tell me,

21    no, that's not correct, we did give them the

22    information and comply, and without any

23    understanding of what level this was discussed at in

24    the meet-and-confers, I have no means, other than to

Page 46

1   sit down side by side with both sides in a room and

2   go through that production, which would take hours,

3   to figure out, you know, who has the better argument

4   here.

5               You know, these are very overbroad

6   and generalized requests and that's the problem that

7   I'm having with it.  They're not pinpointed.

8   They're not showing me emails or letters that detail

9   what discussions were had about what is deficient.

10  These are just throwing documents in the lap of the

11  Court or listing a bunch of documents and putting

12  that in the lap of the Court and saying:  "Here's

13  what they gave us, but they didn't give us this."

14  And then I hear the other side say:  "Sure, we did.

15  We gave them all we were required to give them."

16              How is the Court to resolve that

17  dispute?  There is no mechanism for the Court to be

18  able to resolve a dispute like that.  And this is

19  just a disconnect between the parties in the

20  meet-and-confer.  The Court can give specific,

21  targeted relief, but I'm not going to throw blanket

22  orders out there that are not tied to specific

23  discovery requests or other specific orders of the

24  Court that have not been complied with.

Page 47

```
 1                    MR. JACKSON:  Thank you, Your Honor.
 2                    THE COURT:  I think that brings us to
 3   your specific request, which are Interrogatories 14
 4   and 15.
 5                    MR. JACKSON:  Yes, Your Honor.  This
 6   is Mr. Jackson again.  I apologize.
 7                    In our discovery letter we indicated
 8   that through the meet-and-confer process we did
 9   agree to narrow the scope of these two
10   interrogatories.  I think it was we took out the ELD
11   product categories, for reasons which it's not
12   necessary to state here on the record, but we
13   limited it to the non-ELD.
14                    And we had a meet-and-confer and
15   Mr. Larson was on that call.  He was the primary
16   attorney for CalAmp on that call.  And at the
17   conclusion of that meet-and-confer they agreed to
18   provide the Answers to Interrogatories 14 and 15 as
19   limited by PerDiem during the meet-and-confer
20   process.
21                    It was days or maybe a week or two
22   later that we got either an email or a letter
23   questioning the relevance of those interrogatories,
24   but that wasn't part of our meet-and-confer.  We
```

Page 48

1    reached an agreement through negotiation as to what

2    was going to be provided.

3                    And so that basically, with them

4    questioning the relevance of in particular the

5    identity of their customers, is kind of where we

6    left things and we responded to explain the

7    relevance, but the relevance obviously is something

8    that is directly related to our allegations of

9    indirect infringement.

10                   We allege in our Complaint that

11   CalAmp, in addition to being a direct infringer, is

12   contributorily and by inducement infringing the

13   patents and that means that their customers are the

14   direct infringers under those alternative legal

15   theories.

16                   So if we need to obtain discovery

17   from some subset of their customers to inquire into

18   the use of their products and services provided by

19   CTC to establish that at least CalAmp is an indirect

20   infringer, for example, then we have to have the

21   identity of those customers.

22                   And Mr. Agrawal during his

23   deposition, when we asked him about third parties

24   using the CTC system, for example, right off the top

Page 49

1   of his head he remembered that a large package

2   delivery service -- I won't name the name just to

3   keep the record from being potentially containing

4   confidential information, but -- a large well-known

5   package delivery company was one of their largest,

6   if not the largest, third-party user of their

7   services and he even had an estimate to the

8   thousands about how many units were being tracked by

9   CalAmp for that customer.

10              And he was asked how do you get that

11  information or where is it stored, something to that

12  effect, and he explained that it's in the CTC

13  itself, that he can query that system and obtain

14  that information.  And so it's certainly something

15  that they have at their disposal, their witnesses

16  testified about that, and the information is clearly

17  relevant to the issues in this case.

18              And they had agreed to provide the

19  information during the meet-and-confer process, so

20  we'd like them to answer these two interrogatories

21  as we've narrowed them during the meet-and-confer

22  process, Your Honor.

23              THE COURT:  Let me ask you about that

24  because we had to do a lot of digging because,

Page 50

```
 1   again, in your argument, in your letter briefing, at

 2   Page 4, on this issue concerning Interrogatories 14

 3   and 15, you don't reference what turned out to be

 4   Exhibit 10, which I guess is the email that

 5   confirmed the discussions that were had at the

 6   meet-and-confer.  And it's an email dated August 26

 7   of 2022.

 8                   And that email indicates that the

 9   issue was with the disclosure of the identities of

10   third-party providers that are sought specifically

11   in Interrogatory No. 14 and that CalAmp resisted

12   producing that on relevancy grounds.

13                   And, you know, if that is the core of

14   your argument, as you make it at the end of Page 4,

15   the argument is "The information is relevant to

16   PerDiem in order to evaluate the accuracy of

17   CalAmp's reported volumes and to understand the

18   scope of any license and the identity of those being

19   licensed created by judgment in this action," pardon

20   me, but that's not a model of clarity for the Court.

21   Exactly what relevance argument are you making for

22   this information?

23                   MR. JACKSON:  So, Your Honor, this is

24   Mr. Jackson again.
```

Page 51

1              The argument that we're making

2    there -- and I apologize that it wasn't clear -- is

3    that PerDiem has a number of licensees out there and

4    PerDiem anticipates that there will be future

5    licensees as well; and with respect to the licenses

6    that exist, our damages expert has to be able to

7    subtract out uses of CalAmp's systems that may be

8    licensed by one of those other license agreements

9    that PerDiem has.

10             And so without the identity of the

11   CalAmp customers and, of course, we need also the

12   associated number of units that go along with that,

13   et cetera, but without the identity, it's impossible

14   to know accurately for our damages expert whether

15   the total number of units that CalAmp eventually

16   provides to us should be included in the analysis or

17   whether it should be some lesser number.

18             And, frankly, I mean, that's an issue

19   that's to CalAmp's benefit.  I mean, I know that

20   PerDiem is not -- and I think we've made this

21   point -- a direct competitor to CalAmp.  CalAmp

22   doesn't need to be concerned about turning over to

23   PerDiem's counsel the identity of its customers.

24   We're bound by the protective order.  We're bound by

Page 52

1  our ethical obligations.  We maintain this

2  information in secret if they designate it under the

3  protective order.

4            And so, frankly, this is an issue

5  that should inure to the benefit of CalAmp in terms

6  of at least reducing potential damages exposure.

7  But, you know, we don't have that information and it

8  is relevant to at least this damages issue.

9            THE COURT:  All right.  Let me hear

10  from CalAmp on this issue.

11            MR. LARSON:  Yes.  Thank you, Your

12  Honor.  Joshua Larson for CalAmp.

13            Your Honor, we do object to this

14  discovery, as we've made known to PerDiem and

15  included in our responsive letter brief, Your Honor,

16  on the grounds of relevance.

17            I do want to clarify, too, that some

18  of the information requested by these

19  interrogatories we have produced in the form of the

20  spreadsheets we discussed earlier.  I don't think we

21  need to revisit all of that.

22            But it sounds like the dispute now is

23  fairly focused on the identity of the customers to

24  whom those sales were made by CalAmp, and we have

Page 53

1    objected to that due to lack of relevance.

2              Your Honor, I didn't discern this

3    from PerDiem's letter brief either, but it sounds

4    like today they're arguing that it's relevant based

5    on a theory of indirect infringement.  That's the

6    first time that I've heard that.

7              But, Your Honor, I would respond

8    that, you know, similar to what we put in our letter

9    brief I think still applies here, which is that the

10   contentions we have from PerDiem in this case, the

11   infringement contentions, which I know we've gone

12   back and forth with several times with them and had

13   to bring that dispute to the Court, Your Honor, but

14   those infringement contentions describe cases of

15   alleged direct infringement by CalAmp and that's

16   what those have been focused on, the system claims

17   that we understand PerDiem alleges that CalAmp is

18   the one who makes and uses and has sold those

19   systems that it alleges to meet their claims and

20   that CalAmp is the one who has performed those

21   methods.

22              We don't have any infringement

23   contentions from PerDiem that relate to indirect

24   infringement by any of the customers of CalAmp and

Page 54

1   so in that sense we would submit that the identity

2   of those customers has not been shown to be relevant

3   in this case.

4                    THE COURT:  All right.

5                    Mr. Jackson, anything further before

6   I rule on PerDiem's Motion to Compel Supplemental

7   Responses to Interrogatories 14 and 15?

8                    MR. JACKSON:  Yes, Your Honor.  So

9   this really gets into one of the later issues, but

10  since Mr. Larson raised it, I'll touch on it at

11  least at this point.

12                   We don't have their noninfringement

13  contentions and so it's impossible to know what

14  their arguments specifically are going to be as it

15  relates to direct infringement.

16                   It may be that they have a good point

17  and that, for example, if there's a method, they

18  don't practice one of the steps, maybe the step is

19  practiced by one of their customers, and that's

20  their noninfringement argument.  If that's the case,

21  we'll reevaluate our infringement case in light of

22  that information and we can supplement the

23  infringement contentions to either alter them or to

24  at least provide as an alternative theory why it is

Page 55

1    the activities of the customer are still

2    attributable to CalAmp, for example.

3                   So of course our primary position is

4    that CalAmp is a direct infringer, but that's not

5    our only position.  They're certainly aware of it,

6    it's right in the Complaint, and shielding discovery

7    because we haven't revised contentions at this point

8    when we don't have a deadline for that for at least

9    a few weeks is improper.

10                   You know, discovery is -- Your Honor

11   knows discovery.  I don't need to tell you about

12   discovery.

13                   But we need that information to

14   assess the case.  That's part of our job, is to be

15   able to narrow issues and focus on issues and adjust

16   where appropriate and move the case forward in that

17   regard.  And without complete answers to 14 and 15

18   we don't have all of that information.

19                   THE COURT:  All right.  Well, the

20   Motion to Compel Supplemental Answers to

21   Interrogatories 14 and 15 on this record is denied

22   without prejudice.

23                   PerDiem does not sufficiently explain

24   how the information on the identities of CalAmp's

Page 56

1    customers is relevant to its infringement claims,

2    even though CalAmp raised this as a sticking point

3    in the email that I mentioned on the record attached

4    as Exhibit 10 to Document Item No. 92.

5                PerDiem seemed to argue, which,

6    again, as I said earlier, was not quite clear to the

7    Court, apparently it was PerDiem's argument in the

8    letter brief that it needed to double-check or it

9    needed the customer identity to determine the

10   veracity of the sales volumes disclosed by CalAmp or

11   how it would verify the sales volumes that CalAmp

12   has disclosed.

13               And today on the call I'm hearing the

14   relevance argument that's largely tied to

15   potentially indirect infringement claims, which have

16   not been at all addressed in the letter briefing and

17   which, you know, for the Court's benefit, I'm not

18   going to make a ruling of relevance based on

19   arguments that have not been fully discussed in the

20   briefing and argued before the Court.  So for those

21   reasons the motion to compel is denied without

22   prejudice.

23               Next let me turn to source code

24   review, and I have to say, to both sides, that this

Page 57

1    is an issue that I find should not have been raised

2    as a discovery dispute.

3                    It seeks no particular relief under

4    the Federal Rules of Civil Procedure or the Court's

5    standing order on source code review and it seems to

6    me that PerDiem is raising for the first time in its

7    letter briefing a matter that it did not address

8    with CalAmp prior to this letter brief, that it

9    would offer to pay the costs for installation of

10   utilities that would make the source code review by

11   its expert go more seamlessly.

12                   And I have to ask PerDiem, where was

13   this discussed in the meet-and-confer and what was

14   CalAmp's reaction to it if it was discussed?  And if

15   it's discussed for the first time in the letter

16   brief, why are you putting it before the Court?

17                   MR. JACKSON:  Your Honor, this is

18   Mr. Jackson again.

19                   So we did discuss it during the

20   meet-and-confer and we on multiple occasions

21   reiterated over and over that we were willing to pay

22   to the extent there were any costs associated with

23   any of these tools and/or provide the installation

24   files themselves that could be loaded onto the

Page 58

1   computer.

2                   So, for example, I have an email from

3   October 17 -- this was, I think, the most recent

4   reiteration of PerDiem's position on this -- where

5   it's an email from me to Mr. Larson where I said

6   that PerDiem has offered to pay for it -- that's

7   referring to the PowerGREP tool -- and provide the

8   non-trial version executable file to you for the

9   source code review.

10                  And then in this same email string

11  that I happened to pull right before the call,

12  also -- let's see here if I can find it quickly,

13  Your Honor -- I personally have made that

14  indication, that we pay for these costs of these

15  tools, to CalAmp.  I don't know specifically if it

16  was Mr. Larson in each case, although I think it

17  was.  But at least on three separate occasions it

18  was indicated that PerDiem would be happy to pay for

19  the costs of any of these tools or, as I say, give

20  them the installation files themselves.

21                  THE COURT:  All right.  Let me hear

22  from CalAmp.  If PerDiem pays, can this be

23  accomplished?

24                  MR. LARSON:  Yes, Your Honor.  I

Page 59

```
 1   think that is accomplished or could be accomplished,
 2   Your Honor.  As we've stated in our letter brief,
 3   you know, there is a cost associated with obtaining
 4   the software as well as the effort of the necessary
 5   technical personnel to install that.  But if PerDiem
 6   was willing to reimburse for those costs, then I
 7   think this issue could be off the table.
 8                  THE COURT:  All right.  Any further
 9   comments?
10                  Mr. Jackson, will you pay for the
11   costs?  I think CalAmp raised an issue about the
12   cost of the individual to install it.  Is that a
13   subject that's been discussed or does that need to
14   be discussed?
15                  MR. JACKSON:  That's the first time
16   that issue has been raised, Your Honor.  As I said,
17   we have multiple times offered to pay and have
18   really received no response to our offer.  And so
19   I'm happy to hear that CalAmp is now willing to
20   install those if we pay the costs.
21                  For the most part, most of these
22   tools are relatively inexpensive, so it's really not
23   a huge obstacle, and that's part of why we couldn't
24   understand why we couldn't get those installed.  But
```

Page 60

1    it will save time reviewing the source code that's

2    been made available by CalAmp.

3                    THE COURT:  All right.  Then I will

4    direct --

5                    MR. JACKSON:  But, Your Honor --

6                    THE COURT:  I'm sorry; go ahead.  Go

7    ahead, Mr. Larson.

8                    Or is it Mr. Jackson?

9                    MR. JACKSON:  This is Mr. Jackson.

10                    THE COURT:  Okay.

11                    MR. JACKSON:  Yes.  I apologize, Your

12    Honor.

13                    I mean, our expert is certainly

14    qualified to install those tools with CalAmp's

15    supervision.  If Mr. Larson or someone else from

16    CalAmp wants to be there to watch the installation,

17    we're happy to undertake that effort ourselves.  The

18    source code reviewers are certainly experts in that

19    field.  They use these tools all the time and can

20    install them readily.  So there should be zero cost

21    to CalAmp even as it relates to installation.

22                    THE COURT:  Well, I'm going to direct

23    the parties to meet and confer to work this out.  It

24    seems like there is a solution at hand.  I will

Page 61

1    direct the parties to reach that solution by this

2    Friday.

3                    If there are any further issues about

4    costs, again, please do make every effort to work it

5    out; but if there is an issue with whether an

6    expense should be borne by CalAmp or by PerDiem, the

7    Court will hear it and most likely decide it on the

8    papers.

9                    I would probably direct the parties

10   to make a joint submission with each side's position

11   and to do that within one business day after the

12   Friday deadline, to do it the following Monday, if

13   there are still any issues.

14                   But meet and confer, resolve it by

15   Friday.  If there is any issue as to who bears what

16   cost and how much it is, then put your positions in

17   a joint letter to the Court by Monday, no more than

18   four pages, with each side's position, and I will

19   decide it on the basis of review of the letter and

20   put an oral order on the docket if needed.

21                   I will not venture into the issue of

22   what is an adequate break room for the expert.  That

23   is well and far beyond any type of appropriate

24   relief that should be sought in a court hearing.

Page 62

1    The parties are to resolve that.

2              All right.  This brings us to the

3    noninfringement contentions and PerDiem's motion to

4    compel a complete or a more fulsome response by

5    CalAmp to its position on noninfringement and it's

6    specifically Interrogatory No. 10 that is the

7    contention interrogatory relating to

8    noninfringement.

9              I'll hear Mr. Jackson on that.

10             MR. JACKSON:  Thank you, Your Honor.

11             So we have restated the contention

12   interrogatory there at the top of Page 6.  In this

13   Court's order, the scheduling order in this case,

14   Judge Stark, you know, has a provision that

15   specifically directs the parties or encourages the

16   parties to serve and respond to contention

17   interrogatories early in the case and that is the

18   subject of this interrogatory and this is their

19   contentions as to noninfringement, information about

20   which is solely within their knowledge.  So we are

21   looking for that information to help focus the

22   discovery, ongoing discovery, in this case.

23             As it stands now, we don't know

24   specifically where to focus our ongoing efforts; for

Page 63

1   example, depositions that we may have coming up,

2   where should we focus our questioning, what should

3   we be looking for in their source code, for example,

4   or other documents that they've produced.

5              So the interrogatory and I think the

6   purpose behind Judge Stark's order is to encourage

7   the focus and the process of going through discovery

8   on what are the real issues in the case.

9              I mean, I'll note that CalAmp can't

10  take the position that it's too early or it's

11  improper.  They themselves served contention

12  interrogatories on PerDiem directed to our responses

13  to their invalidity contentions and instead of, you

14  know, saying it was premature or that it needed to

15  await some future deadline, we provided that

16  analysis, and I think it was well over 400 pages of

17  charts and analysis, you know, textual analysis, as

18  well as a handful of documents that supported those

19  analysis and charts.  So we answered that.  They

20  have not complained about the sufficiency of our

21  response.

22             We're simply asking for the

23  reciprocal response from CalAmp, provide a response

24  to our infringement contentions which we provided

Page 64

1    and they currently have no objections to at least.

2                    So I know your Honor, in the context

3    of this issue, asked the parties to address this

4    Leader Tech versus Facebook case that was a decision

5    written by Judge Stark, and I can give you PerDiem's

6    position on that is that it really doesn't control

7    here.

8                    I think, as both parties acknowledged

9    in their letter, we've done the research and we

10   certainly haven't been able to find any Delaware

11   cases applying Leader Tech to responses to

12   infringement contentions; in other words,

13   noninfringement contentions.  But that in other

14   courts -- and I think we cited cases from Texas as

15   well as from Illinois -- the courts there have gone

16   on the record and said that this is appropriate

17   discovery.

18                    And I know that from personal

19   experience in the Eastern District of Texas that's

20   something actually that comes very early in the case

21   typically, and we've cited cases to those two

22   districts.

23                    And specifically relating to Judge

24   Stark's analysis in this case, I think the key point

Page 65

1    that he makes and the issue or the point that

2    dictates his outcome in this case is on -- I guess

3    it's not published, so it's 2009 WL 3021168, but on

4    Page *2 he says:  "This case is fundamentally about

5    whether Facebook infringes Leader's patent, not

6    about whether Leader practices its own patent."

7                      And in this case I'm sure Your Honor

8    is aware, but just for background, the interrogatory

9    was by Facebook to the patentee, Leader, asking them

10   to chart any products that they believed were

11   covered by their own patents and not only to

12   identify them, but to do claim charts for those

13   products.

14                     And Judge Stark says that while the

15   identity of those products is relevant, that the

16   charting of those products against their own patents

17   was basically not proportional to the needs of the

18   case.  And that's where he makes the point that this

19   case is fundamentally about infringement, not about

20   whether the patentee practices its own patent.

21                     Here our interrogatory is directed to

22   that very fundamental issue, to use Judge Stark's

23   language, of infringement.  We're asking them to

24   provide their noninfringement contentions.  That is

Page 66

1    the fundamental issue in this patent case.

2                   So I think that if Judge Stark -- of

3    course I'm speculating, but if Judge Stark -- were

4    to apply his Leader Tech opinion to the

5    interrogatory that we have here, that he would come

6    down on the side of saying, no, because this is a

7    fundamental issue in the case, the providing of

8    these noninfringement contentions, whether they be

9    in chart form or otherwise, or in narrative form,

10   either one or maybe a combination here, is

11   appropriate here because it's going to focus

12   discovery.  And obviously we made this point in our

13   discovery letter.

14                   They pled that they didn't infringe.

15   They obviously had a basis to believe they didn't

16   infringe.  So it isn't like they haven't formulated

17   some noninfringement positions.  They have those

18   noninfringement positions.  We are asking for them

19   to be disclosed so that, again, discovery can

20   proceed in a more focused approach going forward.

21                   If claim construction alters their

22   analysis, they certainly can amend their

23   interrogatory responses and provide supplemental

24   responses; or if their expert, when they hire an

Page 67

1    expert and the expert does his or her analysis, if

2    the expert has additional or different

3    noninfringement positions, they, again, can

4    certainly supplement their interrogatory responses

5    to address those changed views or updated views.

6    That's not a problem, and it's certainly not an

7    obstacle here.

8                        Again, we've cited cases, albeit from

9    other districts, where those courts have ordered the

10   parties, the accused infringer, to identify its

11   noninfringement contentions without waiting for

12   those later events to occur.

13                       THE COURT:  All right.  When I asked

14   the parties, you know, to take a look at Leader and

15   give me their respective positions on its

16   applicability, I recognize that it's not on all

17   fours a good case, it's a different factual setting,

18   but I guess what I was really seeking and perhaps

19   should have been more precise in detailing in the

20   order, what I was seeking is just asking for both

21   sides to give me your arguments and your positions

22   on when the party -- in this instance, the

23   defendant -- is accused of infringement, who is

24   defending on those claims, and it's not the

Page 68

1  defendant's burden of proof to show a negative, show

2  no infringement, when in the case is it time, is it

3  the appropriate time, so to speak, to have that

4  defendant give up its position on why it does not

5  infringe as alleged and how detailed a response that

6  needs to be at certain phases of the case.

7              And that's really what I was looking

8  for.  I think you've addressed it, Mr. Jackson.  I

9  want to now hear from CalAmp and then we'll go from

10  there.

11              MR. LARSON:  Thank you, Your Honor.

12  Joshua Larson for CalAmp.

13              As the Leader Tech decision noted,

14  Your Honor, and as you just mentioned, it does talk

15  about, in the context of a party having to chart its

16  own products, the idea of what level of detail is

17  appropriate for an interrogatory response when it's

18  not an issue that a party has the burden of proving,

19  and that same reasoning applies here.

20              This is not about something that

21  CalAmp has to prove.  We don't have the burden

22  legally to prove the negative, that our products

23  don't infringe.  That burden of proving infringement

24  is on PerDiem.

Page 69

1           And that's why the Leader Tech

2    decision's reasoning is applicable here, because

3    this is an issue that PerDiem needs to prove; and we

4    do need to respond to that, but it's not the type of

5    thing of like PerDiem proving its case in this case.

6           And that reasoning is consistent with

7    that of other district courts that have found that

8    contention interrogatories, particularly related to

9    noninfringement, can be appropriate, but they're

10   appropriate at a particular time in the case.

11          And some of the prerequisites there

12   are the idea that the Court has construed the claims

13   and that the plaintiff has come forward and offered

14   its analysis of infringement, either via

15   infringement contentions or even via its expert

16   report, that the defendant can then respond to in

17   detail, what is the detailed analysis for why the

18   products are accused of infringement.

19          And that's our concern here, Your

20   Honor, is that this interrogatory and the fact that

21   PerDiem is seeking CalAmp's noninfringement

22   positions may be appropriate at some point in the

23   case, but demanding that CalAmp produce every reason

24   right now in detail that it doesn't infringe is

Page 70

```
 1   really premature and inappropriate given the stage
 2   of the case, Your Honor.
 3              And so we would ask that the time for
 4   CalAmp to respond to this interrogatory be after the
 5   Markman hearing and then at that point that CalAmp
 6   would be able to respond to this interrogatory with
 7   its noninfringement positions.
 8              THE COURT:  Just a followup question.
 9   But in your meet-and-confers didn't CalAmp believe
10   the plaintiff believed that it would supplement and,
11   in fact, supplement by September 23, 2022, and that
12   there seems to now be a little bit of backtracking
13   on the part of CalAmp saying, well, it's really not
14   meaningful to do it until we have the Court's claim
15   construction order?
16              MR. LARSON:  Yes, Your Honor, that is
17   correct, that we had discussed this issue and
18   discussed supplementation with the plaintiff
19   previously.  And as we looked at that issue, we had
20   significant concerns with doing so at the time given
21   some of these issues we've raised.
22              We've had this target with their
23   infringement contentions that has moved many times,
24   you know, and we've raised this issue with the Court
```

Page 71

1   before, but they've supplemented their contentions I

2   believe four times at least now, and it's been very

3   much a moving target in this case in terms of what

4   products are at issue and what their theories of

5   infringement are that we've been struggling to get

6   our hands around in this case and to really

7   understand what the infringement contentions are

8   that we're having to respond to.

9          And as that process has gone on, it's

10  become very clear that the parties have some pretty

11  significant disputes about the scope of the claims

12  that have been raised in the Markman briefing that's

13  now complete for Your Honor and we think that those

14  issues have a significant impact on the infringement

15  question and particularly how we would be able to

16  respond to be able to understand what the scope of

17  the claims are in this case and how that's going to

18  impact the issues of infringement both that PerDiem

19  needs to prove and how we may respond to that.

20          THE COURT:  All right.  Thank you.

21          Anything further, Mr. Jackson?

22          MR. JACKSON:  Your Honor, just to

23  reiterate, I mean, I think Your Honor picked up on

24  an excellent point, they frankly agreed to answer

1    this interrogatory in August and then they asked for

2    additional time, which we gave them.  I think they

3    asked for an additional month, if my recollection is

4    correct.  And that put the deadline for them to

5    supplement at September 23.  And then September 23

6    came and went with no supplementation.

7                    So this argument about somehow the

8    claim construction being critical before they

9    provide noninfringement contentions, that's an

10   after-the-fact creation designed to deflect from

11   their obligation to answer the interrogatory as they

12   agreed to do.

13                   And as I said previously, if some

14   subsequent ruling occurs or they get some subsequent

15   input from their experts, they're certainly able to

16   amend their response to the interrogatory to address

17   that later developed information.

18                   So there is not a good-faith basis

19   for -- well, that's not a correct statement.  There

20   is not a good basis to delay this.  Essentially

21   they're asking to delay from today's date roughly

22   four-and-a-half months.

23                   In the interim we're taking discovery

24   and we don't know where the real issues are on the

Page 73

```
 1    infringement side of the case and that's a problem

 2    that's going to be causing all parties, including

 3    CalAmp, probably a lot of wasted time and resources.

 4                    THE COURT:  All right.  On this

 5    application I will grant PerDiem's requested relief

 6    and order CalAmp to supplement its response to

 7    Interrogatory No. 10 and I'll order that the

 8    supplementation occur within two weeks from today's

 9    date.

10                    And my reason for ruling in that

11    fashion is as follows:  As was discussed, it

12    appeared that CalAmp was at one point willing to

13    supplement and recognized it had an obligation to

14    respond to the interrogatory and now is seeking an

15    even further delay from the Court until after the

16    claim construction order issues, and I don't think

17    it's necessary to delay quite that long.

18                    I've looked at other case

19    authorities, some of them have been discussed in the

20    briefing, others have not, but I find that the

21    procedural posture of this case weighs in favor of

22    compelling the supplemental response to

23    Interrogatory 10 at this stage.

24                    In the Speedtrack vs. Amazon case, a
```

Page 74

1    case out of the Northern District of California, it

2    is 2019 WL 1433728, the Court held that it was

3    appropriate to compel a response to a

4    noninfringement contention interrogatory after claim

5    construction briefing was complete, and that's the

6    stage that this case is at now.

7                    The Court in Speedtrack specifically

8    distinguished its earlier decision in another case,

9    reaching the opposite conclusion, explaining that

10   the briefing on claim construction was not complete

11   in that case.

12                   Here we have completion of briefing

13   and claim construction.  It doesn't seem necessary

14   to wait for a decision on claim construction prior

15   to proceeding with having the defendant respond to

16   the noninfringement contention interrogatory.

17                   And other courts, in fact, have held

18   that a noninfringement contention interrogatory is

19   not premature when the plaintiff has already

20   provided its infringement contentions and claim

21   charts, and notwithstanding disputes that are not

22   presently before the Court about whether or not

23   those infringement contentions themselves and

24   supplementation are sufficient and defendants may

Page 75

1    have their issues with that.

2                    But putting that aside, the

3    persuasive authority from other jurisdictions

4    indicates it's not premature when the plaintiff has

5    already provided its infringement contentions and

6    claim charts.

7                    And the cases that support that

8    proposition are FaceDouble, Inc., vs. Face.com,

9    Inc., a case out of the Southern District of

10   California at 2014 WL 5858368; and the Fellowes

11   case, which I think was cited in the briefing,

12   Fellowes versus Aurora Corp., a case out of the

13   Northern District of Illinois at 2009 WL 1097063.

14   That threshold certainly has been satisfied in this

15   case.

16                    PerDiem served its initial

17   infringement contentions on February 7.  On May 17

18   the Court ordered PerDiem to supplement by June 15,

19   and disclosing noninfringement contentions at this

20   stage in the Court's view will not improperly shift

21   the burden of proving noninfringement onto CalAmp's

22   shoulders.

23                    So with that I think that covers all

24   of our discovery disputes.  Is there anything

Page 76

1   further?

2              From the plaintiff, Mr. Jackson?

3              MR. JACKSON:  Your Honor, I believe

4   we've covered all of the issues raised in our -- oh,

5   wait.  Your Honor, did I address Interrogatory No. 2

6   directed to the structure, function, and operation

7   of the accused instrumentalities?  This was on the

8   bottom of Page 3 and top of Page 4 of our letter

9   brief.  I don't believe we've discussed that.  I

10  know that the issues got jumbled in the letter

11  briefing.  I apologize.

12             THE COURT:  Well, I mean, I'll hear

13  you if you want to make a record on that.  But in my

14  view the relief requested overlaps with the issues

15  that I had with some of the other requests in that

16  it was a broad and blanket and nonspecific, very

17  general request for relief that was very hard for

18  the Court to parse through, particularly when I'm

19  hearing from the other side that much of this has

20  been produced in the document productions that have

21  been made and that it has, in addition, raised

22  objections to some of the itemized information that

23  falls under the umbrella of that interrogatory.  It

24  has raised valid objections and there is no record

Page 77

1    in the letter briefing about whether or not those

2    objections are proper or not.

3                   PerDiem hasn't taken issue with

4    specific objections to production made by CalAmp.

5    And, again, the Court is at a loss as to how to

6    rectify a very general, overbroad request for relief

7    when I'm met with an argument by the other side that

8    it's in these volumes of documents that we've

9    produced, it's there, and if it's not there, it's

10   because we've made a valid objection.

11                  So, I mean, if you have any response

12   to that, I'll hear you out on that, but on this

13   record I'm not inclined to rule on that one as I

14   have ruled similarly on the other issues we've

15   discussed that it's too general and overbroad for

16   the Court to fashion any relief and there's been no

17   briefing of whether or not objections to certain of

18   that information which is the subject of the motion

19   to compel, whether those objections are proper or

20   not.

21                  MR. JACKSON:  Yes, Your Honor.

22   Again, Mr. Jackson for PerDiem.

23                  So with respect to this

24   interrogatory, they did not rely on Rule 33(d) in

Page 78

1    the identification of documents and certainly didn't

2    identify by Bates number any documents as allegedly

3    responding to this interrogatory.  So the issue is

4    really seeking a description of the way these

5    products work, at least as it relates to the claims.

6              And so, you know, I understand there

7    may be operations or aspects of the accused products

8    that have no relationship whatsoever to what is in

9    the claims and that's fine, we're not seeking that

10   extraneous information; but just a response to the

11   structure, function, and operation and so forth as

12   specified in more detail here in this interrogatory.

13             THE COURT:  I'm looking at CalAmp's

14   response and the basis for my saying they responded

15   in other fashion is I'm looking at Page 4 of

16   Document Item 95, where it says in the second

17   paragraph with respect to Interrogatory No. 2:

18   "CalAmp has already provided the relevant

19   information sought by this interrogatory through

20   much more detailed sources.  CalAmp has produced

21   extensive documentation that describes the relevant

22   aspects of each accused product's design, function,

23   operation, and method of use."  And they go on to

24   provide more detail about that.  "CalAmp has made

1   the source code for the accused products available

2   for inspection," et cetera.  So they're saying that

3   there have been other avenues of discovery produced

4   to get to that.

5            And with respect to specifically

6   providing a narrative, they find that it's overbroad

7   and too general; that it would be impossible for it

8   to respond to a request that it provide a narrative

9   description of absolutely every feature of every

10  accused product and every way it can be used and

11  every way it cannot be used.  That's just not an

12  appropriate request to make in narrative fashion.

13           So that was the basis for my comments

14  prior to hearing your argument.  But if you have any

15  response to that, I can hear it.  I'll hear from

16  CalAmp.  I don't necessarily want to repeat this.  I

17  think we've been at these issues for a sufficient

18  amount of time today for the Court to address what

19  it can.  But I'll give you the floor one last time,

20  Mr. Jackson.  I'll hear from CalAmp.  And I don't

21  think it's going to change my position that I can't

22  grant the relief on that interrogatory for similar

23  reasons as discussed and as I've just mentioned now.

24           MR. JACKSON:  Thank you, Your Honor.

Page 80

1    So I'll make two points.  Oh, this is Mr. Jackson,

2    for the record.  I apologize.

3                So I think that I understand Your

4    Honor's position.  I certainly understand your

5    position.  And I think that in light of your

6    comments, perhaps what we should do is withdraw this

7    issue and see, for example, what the noninfringement

8    contentions do in terms of focusing issues and, if

9    appropriate, then we can revisit this interrogatory

10   once we've gotten that and gone through whatever

11   meet-and-confer process may be necessary with CalAmp

12   to try to get an explanation.

13               But just for Your Honor's benefit, to

14   the extent that it may not have been clear in our

15   letter, I think we made this point, but they did not

16   respond to this interrogatory at all other than to

17   provide objections.

18               So I know that you are reading from

19   their letter, Page 4 of their letter, but even

20   there, Your Honor, first of all, there's no

21   declaration supporting that; second of all, they

22   don't point to any documents in their letter; and

23   they certainly didn't point to any documents in

24   their interrogatory response.  So we don't have any

Page 81

 1    response at all on the substance other than

 2    objections from CalAmp on this interrogatory.

 3                    But having said that, as I said, I

 4    think that we can basically push this issue off,

 5    hopefully we don't need to bring it back to Your

 6    Honor, and then we can get a response to this.  But

 7    maybe the first step is to see what their

 8    noninfringement contentions look like and then we,

 9    the parties, can go from there.

10                    The other issue, Your Honor, I wanted

11    to raise -- and it's not a discovery issue, per se,

12    but -- I know Your Honor is very busy and I know

13    this Court is very busy as a general matter, and I

14    think we had made the suggestion in the past, but

15    PerDiem is certainly open to the appointment of a

16    discovery master.

17                    You have a lot of cases to handle and

18    maybe a discovery master would allow us to offload a

19    large part of this burden from Your Honor to someone

20    that can basically serve as a referee on these

21    discovery issues that may come up in the future.

22                    That's just a suggestion, Your Honor.

23                    THE COURT:  Very well.

24                    CalAmp, anything further?

Page 82

1              MR. LARSON:  No, Your Honor.

2              THE COURT:  All right.  I'll consider

3      the application with respect to Interrogatory No. 2

4      withdrawn without prejudice.

5              Let me just also reiterate a point

6      that was made earlier.  Again, when a party moves to

7      compel a supplemental response or in this instance a

8      response to an interrogatory that was not answered

9      at all, it is helpful for the Court to have as an

10     exhibit the interrogatory and the opposing party's

11     response so that I can frame the relief that's being

12     sought.

13             With respect to a discovery master,

14     again, that is a matter that the Court would look at

15     on a case-by-case basis; and in this instance, if

16     Judge Williams finds it appropriate to make that

17     call, it is his call to make.

18             So with that I think that concludes

19     all of the issues, unless CalAmp had anything

20     further that the Court needs to address at this

21     time.

22             MR. LARSON:  No, thank you, Your

23     Honor, nothing from CalAmp.

24             THE COURT:  Very well then.  Thank

```
                                           Page 83
 1   you, everyone.   Our hearing is adjourned.
 2                     MR. JACKSON:   Thank you.
 3                     MR. LARSON:   Thank you.
 4                            -  -  -
 5                     (Whereupon the teleconference
 6   adjourned at 3:44 p.m.)
 7                            -  -  -
 8
 9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
```

Page 84

1                           - - -

2                C E R T I F I C A T I O N

3                           - - -

4

5          I, Susan Marie Migatz, RMR, CRR, do hereby

6     certify the foregoing is a true and correct

7     transcript from the official proceedings in the

8     above-entitled matter.

9

10

11

12

13     <%signature%>                    October 27, 2022

14     _____        _____

15     SUSAN MARIE MIGATZ, RMR, CRR                     DATE

16

17

18

19

20

21

22

23

24

[& - acknowledge]

| & | |
|---|---|
| **&**   2:5,10 3:20 4:2 | |

**0**

**01397**   1:6

**1**

**1**   12:4 29:3 34:20
**10**   50:4 56:4 62:6 73:7,23
**1097063**   75:13
**11**   2:14 29:21 31:9 40:5
**1116**   7:17
**12**   29:23
**1200**   2:11
**13**   44:15
**14**   24:11 28:20 28:24 31:4 32:3 33:18 35:11 44:4,15,17 45:6 47:3,18 50:2,11 54:7 55:17,21
**1433728**   74:2
**15**   44:4 47:4,18 50:3 54:7 55:17 55:21 75:18
**1526**   2:3
**17**   58:3 75:17
**1800**   1:23
**1801**   1:23
**19103**   1:24
**19801**   2:12
**19806**   2:4
**1:20**   1:6

**2**

**2**   12:5,17 16:10 17:5 20:21 28:18 30:15 40:3,13 65:4 76:5 78:17 82:3
**20**   15:18 40:7
**20-01397**   3:4
**2009**   65:3 75:13
**2014**   75:10
**2019**   74:2
**2022**   1:8 29:8,22 50:7 70:11 84:13
**22102**   2:7
**222**   2:11
**23**   70:11 72:5,5
**24**   29:8
**25**   1:8
**26**   11:2 50:6
**27**   84:13
**2:00**   1:14

**3**

**3**   30:16 38:9 39:15 40:3,13 42:7 76:8
**3,890**   12:17
**302-300-3432**   2:12
**302-449-9010**   2:4
**3021168**   65:3
**317-231-7729**   2:15
**318**   7:16
**33**   7:4,23 13:2 14:12 15:2

16:21 17:2,2,5 20:6 22:14 24:23 27:16 77:24
**37**   43:18,21
**3:44**   83:6

**4**

**4**   7:2 8:18 9:7 10:8 12:3 22:16 26:24 27:13 50:2,14 76:8 78:15 80:19
**400**   63:16
**43**   31:18,19 45:6
**44**   31:18,20 45:7
**46204-3535**   2:14
**4:30**   20:2

**5**

**500**   2:7
**571-765-7703**   2:8
**571-76507702**   2:8
**5858368**   75:10

**6**

**6**   62:12

**7**

**7**   38:9 42:7 75:17
**72**   28:16

**8**

**8**   7:18 9:24 21:22 22:1,9
**8,800**   4:16 6:13 8:24 10:9 11:22 12:16

**82**   42:20
**8300**   2:7

**9**

**91**   42:7
**92**   56:4
**93-1**   12:17
**95**   78:16

**a**

**ability**   10:12 20:18
**able**   21:8 23:13 46:18 51:6 55:15 64:10 70:6 71:15,16 72:15
**absolutely**   10:4 42:13 79:9
**access**   14:14 34:6
**accessible**   19:17
**accomplished**   58:23 59:1,1
**account**   22:5
**accounting**   18:10,24
**accuracy**   50:16
**accurately**   51:14
**accused**   11:9 12:7 14:2,8 15:1 17:21,22,24 18:6 20:22,23 21:3 23:2 34:11 38:13 67:10,23 69:18 76:7 78:7 78:22 79:1,10
**acknowledge**   17:10 45:15

**acknowledged**
44:21 64:8
**acknowledges**
16:6
**acknowledging**
16:16
**action** 1:3 50:19
**activities** 55:1
**actual** 9:8
**addition** 20:19
48:11 76:21
**additional** 18:2
30:9 67:2 72:2,3
**additionally**
21:1 41:15
**address** 18:23
19:1,6 57:7 64:3
67:5 72:16 76:5
79:18 82:20
**addressed** 28:14
28:20 56:16
68:8
**adequate** 61:22
**adjourned** 83:1
83:6
**adjust** 55:15
**advocacy** 9:17
**afford** 10:12
**afternoon** 3:1,17
3:22 4:1,18
**aggregate** 42:20
**agrawal** 8:3
48:22
**agree** 19:23
29:18,19 47:9
**agreed** 31:6,18
31:23 32:20
33:6 40:20

47:17 49:18
71:24 72:12
**agreement** 31:17
34:21 37:7 48:1
**agreements**
30:16 31:8,24
32:8,14,16,22
35:5 37:12,21
38:2 41:5,13
44:19 45:8 51:8
**ahead** 44:11
60:6,7
**albeit** 67:8
**align** 14:24
17:19,20
**allegations** 48:8
**allege** 48:10
**alleged** 15:11
53:15 68:5
**allegedly** 78:2
**alleges** 53:17,19
**allow** 81:18
**alter** 54:23
**alternative**
48:14 54:24
**alters** 66:21
**amazon** 73:24
**amend** 66:22
72:16
**amount** 79:18
**analyses** 34:10
**analysis** 5:4 7:12
10:1 11:3 23:15
25:6 51:16
63:16,17,17,19
64:24 66:22
67:1 69:14,17

**analyze** 23:12
**answer** 6:21 7:7
7:23 8:7,11 13:4
15:4 16:9,19
17:7,15 22:13
23:20 49:20
71:24 72:11
**answered** 63:19
82:8
**answering** 7:1
16:21
**answers** 47:18
55:17,20
**anticipates** 51:4
**anybody** 13:14
**api** 30:18 32:1,7
32:22 34:7 35:5
44:21 45:8
**apis** 31:8 37:13
41:5
**apologize** 4:19
5:16 47:6 51:2
60:11 76:11
80:2
**apparently** 56:7
**appear** 27:5
**appearances** 2:1
**appeared** 73:12
**applicability**
25:5 67:16
**applicable** 69:2
**application**
37:13 73:5 82:3
**applies** 53:9
68:19
**apply** 40:6 66:4
**applying** 64:11

**appointment**
81:15
**appreciate** 24:8
**approach** 66:20
**appropriate** 7:1
7:22 24:22 30:8
30:14,20 55:16
61:23 64:16
66:11 68:3,17
69:9,10,22 74:3
79:12 80:9
82:16
**approved** 1:16
**area** 35:8
**argue** 9:20 56:5
**argued** 7:10
29:24 56:20
**arguing** 31:23
33:4 40:16 53:4
**argument** 7:21
8:13 10:4 11:1
21:23 23:8 25:4
26:17 27:21
30:21 35:18
36:5 38:18 39:7
42:15 46:3 50:1
50:14,15,21 51:1
54:20 56:7,14
72:7 77:7 79:14
**arguments** 4:12
10:24 36:13
54:14 56:19
67:21
**articulated** 9:1
27:1
**ascertain** 14:11
**ascertaining**
17:7,15

**aside** 9:19 75:2
**asked** 10:7 16:13
  19:19 21:5
  48:23 49:10
  64:3 67:13 72:1
  72:3
**asking** 11:24
  12:2,12 15:3
  19:16 35:3
  36:14 63:22
  65:9,23 66:18
  67:20 72:21
**asks** 9:21
**aspects** 78:7,22
**asserted** 28:5
**assess** 35:20
  55:14
**assist** 43:21
**associated** 7:3
  11:9 12:10
  15:10,11 23:3
  24:4 51:12
  57:22 59:3
**assume** 13:18
  27:10
**atlantic** 1:23
**attach** 6:6 29:5
**attached** 6:2
  29:4 35:13 56:3
**attaching** 4:15
**attempting**
  43:22
**attorney** 47:16
**attorneys** 11:11
**attributable**
  55:2
**august** 50:6 72:1

**aurora** 75:12
**authorities**
  73:19
**authority** 10:6
  16:24 75:3
**available** 34:4,4
  60:2 79:1
**avenue** 2:3,11
**avenues** 79:3
**await** 63:15
**aware** 10:1
  17:23 55:5 65:8

**b**

**back** 24:1 28:23
  34:20 35:10
  38:3,9 40:13
  45:13 53:12
  81:5
**background**
  31:21 65:8
**backtracking**
  70:12
**barnes** 2:10 4:2
**base** 9:23
**based** 6:12 29:9
  30:9 34:22 53:4
  56:18
**basically** 8:12
  31:16 48:3
  65:17 81:4,20
**basis** 11:16 14:8
  14:18,19 34:14
  34:15 37:18
  61:19 66:15
  72:18,20 78:14
  79:13 82:15

**bates** 78:2
**bears** 61:15
**beefs** 35:22
**behalf** 4:2 8:22
  9:20
**believe** 19:15
  20:4 21:23
  22:13 36:17
  37:6 66:15 70:9
  71:2 76:3,9
**believed** 29:24
  37:11 65:10
  70:10
**believes** 41:19
**bench** 26:22
  28:11
**benefit** 51:19
  52:5 56:17
  80:13
**berquist** 2:5,6
  3:19,20
**better** 18:11
  42:15 46:3
**beyond** 18:3
  23:7 30:1 41:4
  61:23
**bit** 36:13 37:4
  39:7 70:12
**blanket** 11:14
  43:10,16 46:21
  76:16
**borne** 61:6
**bottom** 12:4
  31:19 45:6 76:8
**bound** 51:24,24
**break** 61:22
**brief** 5:23 7:6
  9:1 10:5 12:6

15:23 16:2,6
  19:18 20:4 29:1
  29:22 30:24
  31:3,6 34:1 37:3
  37:6,16 39:15
  40:22 45:17
  52:15 53:3,9
  56:8 57:8,16
  59:2 76:9
**briefed** 6:18
  25:7 26:17
**briefing** 18:17
  24:18 26:11
  30:12 35:16
  36:5 43:11 50:1
  56:16,20 57:7
  71:12 73:20
  74:5,10,12 75:11
  76:11 77:1,17
**bring** 53:13 81:5
**brings** 44:3 47:2
  62:2
**broad** 11:13
  34:24 35:8 45:9
  76:16
**brought** 28:2
**btlaw.com** 2:12
  2:15
**bunch** 46:11
**burden** 5:6 7:3
  8:9 10:3,21
  14:10 17:2,7
  24:21 25:8
  42:15 68:1,18,21
  68:23 75:21
  81:19
**business** 17:6,13
  20:10 21:11

27:19 33:19,19
34:9 38:24 42:4
61:11
**businesses** 34:12
**busy** 81:12,13

**c**

**c** 84:2,2
**calamp** 1:6 3:4
3:24 4:3 7:10
11:10 12:11,12
12:22 13:12
15:14 16:11
18:19,23 19:10
19:13 20:9,18
23:19 27:10,20
29:10,13,23 30:5
31:6,22 32:16
33:4,20,22,24
34:2 36:9,11
38:12,16,20 39:4
39:13 40:16,19
41:7,11 42:8,21
42:21 45:20
47:16 48:11,19
49:9 50:11
51:11,15,21,21
52:5,10,12,24
53:15,17,20,24
55:2,4 56:2,10
56:11 57:8
58:15,22 59:11
59:19 60:2,16,21
61:6 62:5 63:9
63:23 68:9,12,21
69:23 70:4,5,9
70:13 73:3,6,12
77:4 78:18,20,24

79:16,20 80:11
81:2,24 82:19,23
**calamp's** 12:9
15:16 21:15
22:9 29:1,6
30:19,24 32:10
32:23 33:24
50:17 51:7,19
55:24 57:14
60:14 69:21
75:21 78:13
**calculated** 19:5
**calculations**
12:24
**california** 74:1
75:10
**call** 3:3,6 4:5
9:22 25:3 30:6
33:12 40:7,18
47:15,16 56:13
58:11 82:17,17
**called** 13:20
**capturing** 35:8
**career** 23:6
**carried** 42:16
**case** 7:13,14,16
8:22 9:10 17:9
17:18 18:6
20:17 21:20
22:11 23:4,10
25:20 28:5 41:8
49:17 53:10
54:3,20,21 55:14
55:16 58:16
62:13,17,22 63:8
64:4,20,24 65:2
65:4,7,18,19
66:1,7 67:17

68:2,6 69:5,5,10
69:23 70:2 71:3
71:6,17 73:1,18
73:21,24 74:1,6
74:8,11 75:9,11
75:12,15 82:15
82:15
**cases** 53:14
64:11,14,21 67:8
75:7 81:17
**categories** 29:14
30:2 31:13 32:5
32:18 33:3,9,16
37:10 39:14
40:1,6 41:15
47:11
**category** 29:17
**causing** 73:2
**certain** 33:8,10
34:23 44:20
68:6 77:17
**certainly** 4:10,20
5:6,13 10:1
11:10 14:14
15:6 16:1 29:5
33:3 34:19
49:14 55:5
60:13,18 64:10
66:22 67:4,6
72:15 75:14
78:1 80:4,23
81:15
**certified** 1:17,17
**certify** 84:6
**cetera** 42:6,6
51:13 79:2
**challenged** 36:20

**chance** 16:3
22:24
**change** 21:14
79:21
**changed** 67:5
**chart** 15:5,7
65:10 66:9
68:15
**charting** 65:16
**charts** 63:17,19
65:12 74:21
75:6
**check** 23:23
37:22 56:8
**citations** 6:1
**cited** 64:14,21
67:8 75:11
**civil** 1:3 42:12
57:4
**claim** 65:12
66:21 70:14
72:8 73:16 74:4
74:10,13,14,20
75:6
**claims** 28:4
53:16,19 56:1,15
67:24 69:12
71:11,17 78:5,9
**clarify** 19:12
41:1,3 45:5
52:17
**clarity** 50:20
**clear** 36:15 41:6
51:2 56:6 71:10
80:14
**clearly** 7:12,19
17:9 28:16
34:17 49:16

**clerk**  3:14
**client's**  6:13
**code**  56:23 57:5
 57:10 58:9 60:1
 60:18 63:3 79:1
**codes**  17:18
**columns**  12:18
**combination**
 66:10
**come**  14:7 66:5
 69:13 81:21
**comes**  64:20
**coming**  43:23
 63:1
**commencing**
 1:14
**comments**  59:9
 79:13 80:6
**company**  49:5
**compare**  13:16
**compel**  1:13 4:8
 6:8 10:10 12:2
 22:17 25:8
 26:22 41:23
 42:24 54:6
 55:20 56:21
 62:4 74:3 77:19
 82:7
**compelling**
 73:22
**competitor**
 51:21
**compile**  20:16
**complained**
 63:20
**complaint**  48:10
 55:6

**complaints**
 38:11
**complete**  42:2,3
 55:17 62:4
 71:13 74:5,10
**completely**  32:2
 32:4
**completion**
 74:12
**compliance**  36:8
 42:18 43:17
**complied**  37:7
 46:24
**comply**  35:17
 43:18 45:22
**compromise**
 43:6
**compromised**
 43:5
**computer**  58:1
**concern**  69:19
**concerned**  51:22
**concerning**  9:6
 19:1 24:15
 28:19 50:2
**concerns**  70:20
**concludes**  82:18
**conclusion**  47:17
 74:9
**concrete**  26:10
**condition**  34:21
**conduct**  24:9
 25:9
**confer**  18:9
 24:14 25:4,11
 28:1 43:2 46:20
 47:8,14,17,19,24
 49:19,21 50:6

 57:13,20 60:23
 61:14 80:11
**conference**  3:3
 24:11
**conferences**
 25:10
**confers**  30:11
 45:24 70:9
**confidential**  49:4
**confirmed**  18:9
 50:5
**confirming**  43:4
**conform**  35:17
**connecting**  6:9
**consider**  82:2
**consistent**  69:6
**construction**
 66:21 70:15
 72:8 73:16 74:5
 74:10,13,14
**construed**  69:12
**contained**  6:4
**containing**  49:3
**content**  6:15
 36:1
**contention**  62:7
 62:11,16 63:11
 69:8 74:4,16,18
**contentions**  18:1
 29:9 53:10,11,14
 53:23 54:13,23
 55:7 62:3,19
 63:13,24 64:12
 64:13 65:24
 66:8 67:11
 69:15 70:23
 71:1,7 72:9
 74:20,23 75:5,17

 75:19 80:8 81:8
**contents**  44:16
**context**  28:24
 29:2 30:11
 31:22 32:4 64:2
 68:15
**contingent**  29:16
**contractual**
 37:22
**contrary**  28:17
**contributorily**
 48:12
**control**  64:6
**controlling**  7:13
**convey**  4:14
**copy**  8:19
**core**  32:17 50:13
**corp**  1:6 75:12
**corporation**  4:3
**correct**  6:11,15
 7:12 17:16 30:7
 45:21 70:17
 72:4,19 84:6
**correcting**  5:19
**correlate**  19:3
**correspond**
 13:23 18:5
**cost**  59:3,12
 60:20 61:16
**costs**  7:8,10 8:18
 9:21 11:8 12:9
 15:10 19:6,8
 21:16 22:10
 27:22 57:9,22
 58:14,19 59:6,11
 59:20 61:4
**counsel**  29:6
 51:23

**course**  17:12
20:10 21:10
27:6,19 51:11
55:3 66:3
**court**  1:1 3:1,6,8
3:9,11,23 4:6,12
4:15,20,21 5:6
5:18 6:3,11 7:15
7:17 8:14 9:7,11
9:16,18,24 11:12
11:18,24 12:2,12
12:14,15 15:13
16:23 17:11
18:18,22 19:23
22:18 24:7,8,12
24:16 26:8,21
27:2,9,14 28:2
28:10,13 35:7,17
35:20 36:1,2,16
38:5,8 40:23
41:22,24 42:14
42:17,18 43:8,12
43:17,19,24,24
44:11,15 45:10
46:11,12,16,17
46:20,24 47:2
49:23 50:20
52:9 53:13 54:4
55:19 56:7,20
57:16 58:21
59:8 60:3,6,10
60:22 61:7,17,24
67:13 69:12
70:8,24 71:20
73:4,15 74:2,7
74:22 75:18
76:12,18 77:5,16
78:13 79:18

81:13,23 82:2,9
82:14,20,24
**court's**  4:17
10:12 37:8
56:17 57:4
62:13 70:14
75:20
**courts**  64:14,15
67:9 69:7 74:17
**covered**  65:11
76:4
**covers**  75:23
**cox**  2:11 4:1,2
**created**  50:19
**creation**  72:10
**critical**  72:8
**criticized**  23:11
33:23
**cross**  26:12
**crr**  84:5,15
**ctc**  8:5 48:19,24
49:12
**currently**  64:1
**customer**  49:9
55:1 56:9
**customers**  48:5
48:13,17,21
51:11,23 52:23
53:24 54:2,19
56:1
**cv**  1:6

**d**

**d**  2:6 7:4,23 13:2
14:12 15:2
16:21 17:2,2,5
20:6 22:14
24:23 27:16

77:24
**damages**  23:11
51:6,14 52:6,8
**data**  14:15 20:9
21:14
**database**  8:1
14:16,16 18:12
18:14,24 19:13
21:14
**date**  12:19 72:21
73:9 84:15
**dated**  50:6
**dates**  20:13
**davidson**  2:5
3:20
**day**  25:19 27:24
61:11
**days**  47:21
**dbjg.com**  2:8,8
**de**  2:4,12
**deadline**  55:8
61:12 63:15
72:4
**deal**  33:12
**decide**  42:14
61:7,19
**decision**  64:4
68:13 74:8,14
**decision's**  69:2
**declaration**
44:14 45:16
80:21
**defects**  25:1
**defendant**  1:6
2:15 3:24 27:19
67:23 68:4
69:16 74:15

**defendant's**  4:15
68:1
**defendants**
74:24
**defending**  67:24
**defer**  44:5
**deficiencies**  6:10
26:6 27:5 28:3
43:1,4,6
**deficient**  11:17
11:17 35:21
42:22 46:9
**defined**  38:17
**deflect**  72:10
**delaware**  1:1
2:11 64:10
**delay**  72:20,21
73:15,17
**delivery**  49:2,5
**demanding**
43:14 69:23
**demonstrate**  6:3
6:9
**denied**  26:24
42:24 44:1
55:21 56:21
**deny**  22:17
41:23
**deposition**  16:15
48:23
**depositions**  63:1
**derive**  22:4
**deriving**  17:7
20:7
**describe**  53:14
**described**  35:14
41:4

| | | | |
|---|---|---|---|
| **describes** 78:21 | **difficult** 9:12 | 48:16 52:14 | **distrax** 44:20 |
| **description** | 35:20 | 55:6,10,11,12 | **district** 1:1,1 |
| 12:20 13:21 | **digging** 49:24 | 57:2 62:22,22 | 28:10 64:19 |
| 78:4 79:9 | **direct** 48:11,14 | 63:7 64:17 | 69:7 74:1 75:9 |
| **descriptions** | 51:21 53:15 | 66:12,13,19 | 75:13 |
| 13:23,24 14:24 | 54:15 55:4 60:4 | 72:23 75:24 | **districts** 64:22 |
| 16:13 17:20 | 60:22 61:1,9 | 79:3 81:11,16,18 | 67:9 |
| 18:5 19:2 20:19 | **directed** 63:12 | 81:21 82:13 | **djackson** 2:8 |
| 20:23 24:3 | 65:21 76:6 | **discrete** 25:11 | **docket** 3:4 9:13 |
| **design** 78:22 | **directly** 48:8 | **discuss** 36:21 | 61:20 |
| **designate** 52:2 | **directs** 62:15 | 57:19 | **document** 4:16 |
| **designed** 72:10 | **disagree** 13:7 | **discussed** 28:1 | 8:16 12:17 |
| **detail** 16:4 46:8 | 36:12,22 41:11 | 31:8 45:23 | 28:19 38:12 |
| 68:16 69:17,24 | 41:16 | 52:20 56:19 | 42:7 56:4 76:20 |
| 78:12,24 | **disagreed** 30:3 | 57:13,14,15 | 78:16 |
| **detailed** 35:16 | **disagreement** | 59:13,14 70:17 | **documentation** |
| 68:5 69:17 | 19:22 | 70:18 73:11,19 | 39:11 78:21 |
| 78:20 | **discern** 53:2 | 76:9 77:15 | **documents** 6:7 |
| **detailing** 67:19 | **discerning** 43:12 | 79:23 | 6:19,24 7:7 8:8 |
| **determine** 28:16 | **disclosed** 39:12 | **discussion** 27:7 | 8:11,24 10:16 |
| 56:9 | 56:10,12 66:19 | 30:22 | 11:23 13:3,8,11 |
| **develop** 42:14 | **disclosing** 75:19 | **discussions** 46:9 | 13:21 14:1 |
| **developed** 11:1 | **disclosure** 50:9 | 50:5 | 15:20 16:4 18:3 |
| 72:17 | **disconnect** 24:12 | **disposal** 49:15 | 18:8 23:18,18,22 |
| **developer** 34:4,5 | 34:17 46:19 | **dispute** 3:3 | 24:17 27:3,4,11 |
| **development** | **discovery** 3:3 | 24:16 26:8 | 29:17 30:17,18 |
| 39:1 41:11,13 | 9:12 10:18 | 27:12 37:5 43:8 | 30:18 32:1,22 |
| 42:5 | 11:15 12:4 23:4 | 43:9 44:1 45:17 | 33:2,4,20 34:1,7 |
| **devlin** 2:2 3:18 | 23:16 24:9,16 | 46:17,18 52:22 | 34:16,24 35:5,6 |
| **devlinlawfirm....** | 25:9,15,17,19,24 | 53:13 57:2 | 35:15 36:24 |
| 2:4 | 26:8,14 29:12,20 | **disputes** 24:9 | 37:11,13 38:6,15 |
| **devoted** 38:11 | 30:1,9,15,20 | 25:19,19,24 | 38:16,17,19,22 |
| **dialed** 3:6 | 31:4,7 32:3,6 | 26:14 71:11 | 39:1,3,11,14 |
| **dictates** 65:2 | 33:1,8,14 34:22 | 74:21 75:24 | 40:7,12 41:4,7,8 |
| **different** 13:19 | 35:1,3,8 37:4,8 | **distance** 10:11 | 41:12,14,16,20 |
| 67:2,17 | 39:23,24 40:2,5 | **distinguished** | 42:5 44:21 |
| **differing** 14:23 | 40:11,12 44:17 | 74:8 | 46:10,11 63:4,18 |
| 14:24 | 46:23 47:7 | | 77:8 78:1,2 |

80:22,23
**doing**   9:2 34:13
   70:20
**dollars**   11:8 14:8
**donald**   2:6 3:20
**dots**   6:9
**double**   56:8
**drive**   2:7
**due**   15:23 53:1
**dumped**   26:7

**e**

**e**   84:2
**earlier**   52:20
   56:6 74:8 82:6
**early**   62:17
   63:10 64:20
**easily**   14:20,21
   17:20 20:18
**eastern**   64:19
**effect**   17:3 49:12
**effectively**   40:18
**effectiveness**
   24:13
**effort**   59:4 60:17
   61:4
**efforts**   62:24
**eight**   29:13 30:1
   30:5,7 31:10
   32:1,6 34:22
**eighth**   25:5
**either**   17:8,16
   32:9 34:3 40:20
   47:22 53:3
   54:23 66:10
   69:14
**eld**   47:10,13

**electronic**   5:3
   6:19 13:13 14:6
   15:13 16:18
   24:4,19 26:4,16
   27:8,17,23
**electronically**
   13:13
**email**   47:22 50:4
   50:6,8 56:3 58:2
   58:5,10
**emails**   46:8
**employees**   33:22
**encourage**   63:6
**encourages**
   62:15
**enter**   5:1
**entered**   5:19
   35:10 36:6
**entertaining**
   25:3
**entire**   4:15
**entirely**   20:5
**entirety**   8:12,23
   24:3 26:7
**entitled**   22:15
   37:11 41:20
   84:8
**entries**   24:4
**equal**   8:9 14:10
   24:22
**erroneous**   28:16
**especially**   20:15
**esquire**   2:3,6,6
   2:11,13
**essentially**   4:24
   17:10 33:4 35:2
   72:20

**establish**   48:19
**established**   7:18
   22:2
**estimate**   49:7
**et**   42:6,6 51:13
   79:2
**ethical**   52:1
**evaluate**   50:16
**eve**   24:17
**evening**   15:23
**events**   67:12
**eventually**   51:15
**evidenced**   8:9
**exact**   15:21
**exactly**   50:21
**examining**   16:4
**example**   12:14
   13:20 42:3
   44:19 48:20,24
   54:17 55:2 58:2
   63:1,3 80:7
**examples**   26:10
**excel**   19:20
**excellent**   71:24
**exception**   37:19
**executable**   58:8
**execution**   38:14
**exhibit**   6:3 26:12
   26:13 35:13
   50:4 56:4 82:10
**exhibits**   6:7 8:21
   12:15
**exist**   6:11 51:6
**expect**   4:20 6:8
   23:5 26:6,9 38:3
**expense**   61:6
**experience**   64:19

**experienced**
   11:11
**expert**   21:9
   23:11 51:6,14
   57:11 60:13
   61:22 66:24
   67:1,1,2 69:15
**experts**   5:3
   60:18 72:15
**explain**   48:6
   55:23
**explained**   10:15
   38:21 49:12
**explaining**   74:9
**explanation**
   21:17 23:24
   41:19 80:12
**export**   21:15
**exported**   18:14
   18:15
**exposure**   52:6
**extension**   33:16
**extensive**   78:21
**extent**   27:21
   38:22 39:16
   42:10 43:1,14
   45:16 57:22
   80:14
**extract**   8:1 12:5
   14:21
**extraneous**
   78:10
**extreme**   8:23
**extremes**   8:21

**f**

**f**   7:17 84:2

**face.com** 75:8
**facebook** 64:4
　65:5,9
**facedouble** 75:8
**fact** 8:2 13:17
　32:23 69:20
　70:11 72:10
　74:17
**factor** 7:18 9:24
　21:22 22:1,9
　25:5
**factors** 9:24 10:2
　22:7
**factual** 67:17
**failure** 43:18
**fair** 4:11
**fairly** 7:24 52:23
**faith** 72:18
**fall** 3:14
**fallon** 1:10 3:2
**falls** 76:23
**familiar** 11:11
　25:22
**far** 35:23 39:4
　61:23
**fashion** 10:22
　26:23 35:14
　43:9 73:11
　77:16 78:15
　79:12
**fast** 29:21
**favor** 73:21
**feature** 79:9
**february** 75:17
**federal** 24:23
　42:11 57:4
**federally** 1:16

**fellowes** 75:10
　75:12
**field** 13:22 20:7
　24:22 60:19
**fields** 20:12
**figure** 46:3
**file** 29:5 58:8
**filed** 9:13
**files** 16:19 24:5
　57:24 58:20
**filing** 5:14
**filings** 14:19
**finally** 7:5
**financial** 14:15
　23:2
**find** 3:5 57:1
　58:12 64:10
　73:20 79:6
**finding** 20:7
**finds** 82:16
**fine** 15:6 30:3
　78:9
**finish** 24:1
**firm** 2:2 3:18
**first** 3:5 5:10,22
　6:17 8:17 22:23
　30:14,23 33:19
　41:2 53:6 57:6
　57:15 59:15
　80:20 81:7
**fix** 11:18 36:1
**fleet** 20:21
**floor** 79:19
**focus** 36:2 37:3
　55:15 62:21,24
　63:2,7 66:11
**focused** 12:6
　26:1 41:6 52:23

53:16 66:20
**focusing** 23:17
　80:8
**follow** 9:6 39:6
**following** 29:12
　31:9 33:2 61:12
**follows** 73:11
**followup** 16:13
　70:8
**foregoing** 84:6
**form** 20:15 28:7
　52:19 66:9,9
**format** 14:6 15:5
　15:7 18:15
　19:16,20,24 27:8
**formatting** 6:14
**formulated**
　66:16
**forth** 23:14
　34:11,14 39:20
　53:12 78:11
**forward** 25:20
　29:21 55:16
　66:20 69:13
**found** 69:7
**foundational**
　23:3,16
**four** 30:13 61:18
　71:2 72:22
**fours** 67:17
**fourth** 30:19
**frame** 82:11
**framed** 37:5
**frankly** 8:7
　32:19 51:18
　52:4 71:24
**free** 28:10

**friday** 61:2,12
　61:15
**friendly** 10:23
　24:20
**fulfill** 17:13
**full** 4:11 12:2
　16:10 36:8
**fully** 8:11 37:7
　56:19
**fulsome** 62:4
**function** 76:6
　78:11,22
**fundamental**
　65:22 66:1,7
**fundamentally**
　65:4,19
**further** 26:19
　54:5 59:8 61:3
　71:21 73:15
　76:1 81:24
　82:20
**future** 51:4
　63:15 81:21

**g**

**general** 25:13
　35:14 43:10
　76:17 77:6,15
　79:7 81:13
**generalized**
　11:13 35:22
　46:6
**generally** 33:8
**generated** 34:12
**georgia** 7:16
　9:23 10:1 11:3
　21:22 22:1,6
　25:6 26:17

**getting**  6:22
   10:24 11:16
**gilpin**  2:3
**give**  25:11 45:21
   46:13,15,20
   58:19 64:5
   67:15,21 68:4
   79:19
**given**  70:1,20
**gives**  12:18
**go**  6:18 10:11,18
   13:15 16:3 26:5
   27:11 28:23
   44:11 45:13
   46:2 51:12
   57:11 60:6,6
   68:9 78:23 81:9
**goes**  28:7 31:20
**going**  6:6 8:4
   9:16 16:19
   24:12 25:9,20
   29:7 34:20,24
   35:10 41:23
   46:21 48:2
   54:14 56:18
   60:22 63:7
   66:11,20 71:17
   73:2 79:21
**good**  3:1,17 4:1
   4:18 54:16
   67:17 72:18,20
**gotten**  80:10
**gowdey**  2:5 3:20
**grant**  43:15 73:5
   79:22
**graphical**  37:14
**greensboro**  2:7

**grounds**  50:12
   52:16
**group**  14:5
**guess**  50:4 65:2
   67:18
**gui**  30:18 32:1,7
   32:22 34:7 35:5
   37:15 45:8
**guides**  41:12
**guis**  31:8 41:5

**h**

**half**  72:22
**hammered**  30:5
**hand**  42:9 45:20
   45:20 60:24
**handful**  32:13
   32:15 63:18
**handle**  25:18
   81:17
**hands**  71:6
**happen**  17:3
**happened**  32:3
   58:11
**happy**  58:18
   59:19 60:17
**hard**  9:16 36:13
   76:17
**head**  49:1
**hear**  18:19,23
   22:18 36:9 38:3
   43:9 46:14 52:9
   58:21 59:19
   61:7 62:9 68:9
   76:12 77:12
   79:15,15,20
**heard**  21:17,21
   23:24 53:6

**hearing**  10:13
   24:20 27:10,20
   28:24 31:4,19
   32:3 35:11 37:4
   37:9 40:2,5
   44:17 45:6
   56:13 61:24
   70:5 76:19
   79:14 83:1
**heart**  27:12
**held**  1:13 74:2
   74:17
**help**  62:21
**helpful**  36:5,6
   82:9
**high**  25:12
**hire**  66:24
**honest**  11:6
**honor**  3:9,18 4:1
   4:19 5:8,12,15
   6:16 7:22 11:4
   12:1 13:6 15:19
   16:6 17:17
   18:21 19:10,11
   20:2,11,20 21:8
   21:23 22:8,12,17
   22:20 26:20
   28:22 29:22
   30:3,13 31:3,4
   31:11,15 32:5,19
   33:5,7 34:18
   35:3 36:11,12,24
   37:6 39:9,15
   40:17,21,24
   41:21 44:7,10,13
   44:24 45:2,5
   47:1,5 49:22
   50:23 52:12,13

   52:15 53:2,7,13
   54:8 55:10
   57:17 58:13,24
   59:2,16 60:5,12
   62:10 64:2 65:7
   68:11,14 69:20
   70:2,16 71:13,22
   71:23 76:3,5
   77:21 79:24
   80:20 81:6,10,12
   81:19,22 82:1,23
**honor's**  31:22
   32:24 33:15
   34:19 40:10,19
   45:7 80:4,13
**honorable**  1:10
**hopefully**  81:5
**hours**  15:22 46:2
**huge**  7:3 59:23
**hundreds**  15:20
   15:21 25:18,18
**hypothetical**
   22:6

**i**

**idea**  68:16 69:12
**identification**
   27:4 28:3 78:1
**identified**  15:15
**identify**  8:3,6
   65:12 67:10
   78:2
**identifying**  35:9
   44:19
**identities**  50:9
   55:24
**identity**  48:5,21
   50:18 51:10,13

51:23 52:23
54:1 56:9 65:15
**illinois**  64:15
75:13
**impact**  71:14,18
**implication**  45:1
**impossible**  14:4
51:13 54:13
79:7
**imprecise**  39:21
**improper**  7:4
14:12 15:3
27:15 55:9
63:11
**improperly**
75:20
**inability**  19:3
**inappropriate**
70:1
**inclined**  27:15
77:13
**include**  40:12
**included**  18:3
21:12 32:24
51:16 52:15
**includes**  12:19
**including**  20:12
31:7 33:1 40:14
41:8 73:2
**indianapolis**
2:14 4:4
**indicated**  33:7
47:7 58:18
**indicates**  50:8
75:4
**indicating**  32:19
**indication**  10:4
58:14

**indirect**  48:9,19
53:5,23 56:15
**individual**  59:12
**inducement**
48:12
**indulge**  24:12
**inexpensive**
59:22
**information**  6:4
8:1,18 10:16,20
12:18,23 14:11
14:22 16:7,14
18:12,13,14,16
19:4,7,12,14,16
19:19,24 20:1,7
20:8,17 21:2,5,7
21:19,24 22:15
23:3,9 27:18,22
28:4 30:10
37:17 38:24
39:8 45:22 49:4
49:11,14,16,19
50:15,22 52:2,7
52:18 54:22
55:13,18,24
62:19,21 72:17
76:22 77:18
78:10,19
**infringe**  66:14
66:16 68:5,23
69:24
**infringement**
15:12 17:24,24
29:9 48:9 53:5
53:11,14,15,22
53:24 54:15,21
54:23 56:1,15
63:24 64:12

65:19,23 67:23
68:2,23 69:14,15
69:18 70:23
71:5,7,14,18
73:1 74:20,23
75:5,17
**infringer**  48:11
48:20 55:4
67:10
**infringers**  48:14
**infringes**  65:5
**infringing**  48:12
**initial**  5:23 75:16
**input**  72:15
**inquire**  48:17
**inspection**  79:2
**install**  59:5,12
59:20 60:14,20
**installation**  57:9
57:23 58:20
60:16,21
**installed**  59:24
**instance**  67:22
82:7,15
**instrumentalities**
14:2,9 15:1
17:21,23 18:6
23:2 76:7
**intended**  45:5
**intention**  5:16
**intentional**  5:5
**interfaces**  37:14
37:15
**interim**  30:4
72:23
**internal**  33:21
33:21 38:12,16
38:17 39:4,11,12

**interns**  3:14
**interrogatories**
9:5,9 44:4 47:3
47:10,18,23
49:20 50:2
52:19 54:7
55:21 62:17
63:12 69:8
**interrogatory**
6:21 7:2,8,24
8:12,18,20 9:6
9:14,21 10:8
12:3 13:2,4 15:4
16:9,14,20,22
22:13,16 23:20
23:20 26:24
27:13 50:11
62:6,7,12,18
63:5 65:8,21
66:5,23 67:4
68:17 69:20
70:4,6 72:1,11
72:16 73:7,14,23
74:4,16,18 76:5
76:23 77:24
78:3,12,17,19
79:22 80:9,16,24
81:2 82:3,8,10
**inure**  52:5
**invalidity**  63:13
**inviting**  43:20
**invoice**  12:19,19
**involved**  23:5,5
25:18
**irrelevant**  7:11
**issue**  6:13,14,15
6:17,23 9:6
18:19 19:1,6

26:18 27:24
28:18 29:2,19
30:15,16,19
32:17 33:13,13
37:5 39:19,21,22
39:22 40:9,17
44:4,8 45:3 50:2
50:9 51:18 52:4
52:8,10 57:1
59:7,11,16 61:5
61:15,21 64:3
65:1,22 66:1,7
68:18 69:3
70:17,19,24 71:4
77:3 78:3 80:7
81:4,10,11
**issues**  4:8 19:23
25:11 27:12
28:14 30:13,23
31:1,13 40:2,13
44:6 49:17 54:9
55:15,15 61:3,13
63:8 70:21
71:14,18 72:24
73:16 75:1 76:4
76:10,14 77:14
79:17 80:8
81:21 82:19
**item**  12:17 21:16
42:7 56:4 78:16
**itemize**  44:15
**itemized**  38:24
44:22 76:22

**j**

**jackson**  2:5,6
3:20,20,21 4:14
4:18,19 6:16

11:4,5 12:1 13:6
15:19 17:1,17
18:20 22:20,21
26:19 28:21,22
38:9 39:9 44:5,7
44:12 47:1,5,6
50:23,24 54:5,8
57:17,18 59:10
59:15 60:5,8,9,9
60:11 62:9,10
68:8 71:21,22
76:2,3 77:21,22
79:20,24 80:1
83:2
**james**  2:6 3:19
**jberquist**  2:8
**job**  55:14
**joined**  3:14
**joining**  3:2
**joint**  61:10,17
**joshua**  2:13 4:3
19:10 36:11
40:22 52:12
68:12
**jr**  2:13
**jtlarson**  2:15
**judge**  1:11 3:2
28:15 62:14
63:6 64:5,23
65:14,22 66:2,3
82:16
**judgment**  50:19
**july**  24:11 28:20
28:24 29:3,21,23
31:4,9 32:3
33:18 34:20
35:11 40:2,5,13
44:17 45:6

**jumbled**  76:10
**june**  29:8 75:18
**jurisdictions**
75:3

**k**

**keep**  23:17 49:3
**keeps**  27:19
**kept**  17:15 21:10
**key**  12:5 64:24
**kind**  11:7 25:17
34:11 48:5
**know**  5:9 7:14
11:8 13:10,11
14:4,22 15:20
16:1,2 17:22
21:16 22:23
23:7,17 24:5,7
24:15 25:16,17
29:4 31:17
33:17,23 37:19
39:16 40:10
41:5 44:18 45:4
45:19 46:3,5
50:13 51:14,19
52:7 53:8,11
54:13 55:10
56:17 58:15
59:3 62:14,23
63:14,17 64:2,18
67:14 70:24
72:24 76:10
78:6 80:18
81:12,12
**knowledge**  18:3
62:20
**known**  49:4
52:14

**knows**  14:22
55:11

**l**

**l**  2:6
**lack**  18:11 27:3
42:2,17 53:1
**lacking**  45:19
**language**  32:23
33:24 65:23
**lap**  26:7 46:10
46:12
**large**  11:16 49:1
49:4 81:19
**largely**  56:14
**largest**  49:5,6
**larson**  2:13 4:3
19:9,10 36:10,11
40:21,22,24
44:21 47:15
52:11,12 54:10
58:5,16,24 60:7
60:15 68:11,12
70:16 82:1,22
83:3
**late**  24:5
**law**  2:2 3:14,18
7:13 28:17
**layered**  7:21
**lays**  7:17
**lead**  3:21 4:5
**leader**  64:4,11
65:6,9 66:4
67:14 68:13
69:1
**leader's**  65:5
**leading**  18:16
32:3 40:5

[led - migatz]                                                    Page 13

**led**  45:12
**left**  48:6
**legal**  1:22 10:4
    48:14
**legally**  68:22
**lengthy**  28:13
**lesser**  51:17
**letter**  5:12,23 7:6
    9:1 10:5 12:4,6
    15:17,23 16:2,6
    17:4,5 19:18
    22:23 24:18
    26:11 29:1,4,6
    29:15,22,23 30:2
    30:24 31:3,6,9
    31:11 32:10,24
    33:15,18 34:1,20
    34:21 35:16
    36:5 37:3,6,16
    38:10 39:15,17
    40:4,8,17 43:3
    43:11 45:17
    47:7,22 50:1
    52:15 53:3,8
    56:8,16 57:7,8
    57:15 59:2
    61:17,19 64:9
    66:13 76:8,10
    77:1 80:15,19,19
    80:22
**letters**  38:1 46:8
**level**  20:6 25:12
    45:23 68:16
**license**  30:16
    31:8,24 32:8,15
    32:21 35:5
    37:12,21 45:8
    50:18 51:8

**licensed**  50:19
    51:8
**licensees**  51:3,5
**licenses**  51:5
**lieu**  13:3
**light**  54:21 80:5
**likes**  21:9
**limited**  32:21
    33:3,8,16,21,24
    34:23 39:24
    40:15 45:7
    47:13,19
**line**  3:7,16 14:1
**list**  30:14 31:10
    40:6 42:4
**listed**  29:15 30:2
    30:6,8 35:13
    39:14 41:9,16
**listing**  46:11
**lists**  20:21 29:13
**litigation**  25:14
    25:16
**little**  39:7 70:12
**livenote**  1:17
**llc**  1:3 2:2
**llp**  2:5,10
**loaded**  57:24
**long**  27:11 73:17
**look**  7:6 8:10
    16:7 67:14 81:8
    82:14
**looked**  70:19
    73:18
**looking**  11:18
    17:3,4 38:9
    62:21 63:3 68:7
    78:13,15

**loss**  77:5
**lot**  49:24 73:3
    81:17
**lumped**  31:2

## m

**magistrate**  1:11
    3:2
**maintain**  18:8
    52:1
**maintained**
    17:12 19:12
**maintains**  20:9
**making**  5:8 8:24
    11:13,22 35:19
    50:21 51:1
**manager**  8:5
**manner**  10:19
**manually**  5:1
**map**  35:18
**maps**  42:5
**marie**  1:15 84:5
    84:15
**market**  1:23
**markman**  70:5
    71:12
**master**  81:16,18
    82:13
**matter**  57:7
    81:13 82:14
    84:8
**matters**  24:10
**mazr**  3:18
**mazur**  2:3 3:17
**mclean**  2:7
**mean**  8:21 11:21
    13:10 18:4,5
    33:21 34:1

    39:10 40:15
    51:18,19 60:13
    63:9 71:23
    76:12 77:11
**meaningful**
    70:14
**means**  45:24
    48:13
**mechanism**
    16:21 46:17
**meet**  18:9 24:14
    25:4,10 28:1
    30:11 43:2
    45:24 46:20
    47:8,14,17,19,24
    49:19,21 50:6
    53:19 57:13,20
    60:23 61:14
    70:9 80:11
**memorandum**
    28:14
**mentioned**  20:4
    26:10 33:17
    39:17 56:3
    68:14 79:23
**meridian**  2:14
**merit**  1:16
**meritorious**
    36:18
**met**  77:7
**method**  54:17
    78:23
**methods**  53:21
**mid**  1:23
**middle**  16:11
**migatz**  1:15 3:9
    84:5,15

| | | | |
|---|---|---|---|
| **minimize** 19:23 | **names** 14:2 | 62:8,19 64:13 | **objected** 21:19 |
| **missing** 27:22 | 17:21 20:24 | 65:24 66:8,17,18 | 41:17 53:1 |
| 32:14 | **narrative** 13:3 | 67:3,11 69:9,21 | **objection** 15:6 |
| **model** 50:20 | 26:23 27:16 | 70:7 72:9 74:4 | 42:11 77:10 |
| **moment** 9:20 | 66:9 79:6,8,12 | 74:16,18 75:19 | **objectionable** |
| **monday** 1:8 | **narrow** 47:9 | 75:21 80:7 81:8 | 29:11 |
| 61:12,17 | 55:15 | **nonspecific** | **objections** 28:10 |
| **monitored** 12:8 | **narrowed** 49:21 | 76:16 | 33:11 36:17,19 |
| **month** 14:8,8 | **natively** 19:13 | **normally** 17:14 | 36:23 38:4 |
| 15:8 72:3 | **nature** 6:14 | **northern** 74:1 | 39:19 41:20 |
| **monthly** 14:18 | **necessarily** 21:3 | 75:13 | 64:1 76:22,24 |
| 34:15 | 79:16 | **notary** 1:18 | 77:2,4,17,19 |
| **months** 37:18 | **necessary** 47:12 | **notation** 5:15 | 80:17 81:2 |
| 72:22 | 59:4 73:17 | **note** 36:16 41:10 | **objective** 5:7 |
| **motion** 4:7 6:8 | 74:13 80:11 | 63:9 | **obligation** 72:11 |
| 25:8 26:22 | **need** 10:13 23:22 | **noted** 20:11 | 73:13 |
| 41:23 42:23 | 39:23 43:1,2 | 68:13 | **obligations** |
| 54:6 55:20 | 48:16 51:11,22 | **notwithstanding** | 37:22 52:1 |
| 56:21 62:3 | 52:21 55:11,13 | 74:21 | **obstacle** 59:23 |
| 77:18 | 59:13 69:4 81:5 | **number** 4:8 8:7 | 67:7 |
| **motions** 1:13 | **needed** 5:8 56:8 | 12:7,19,20 14:7 | **obtain** 48:16 |
| **movant** 10:3 | 56:9 61:20 | 15:9,21 23:1,14 | 49:13 |
| 28:8 | 63:14 | 32:12 35:14 | **obtaining** 59:3 |
| **move** 28:18 | **needs** 6:5,11 | 41:14 42:17,18 | **obviously** 9:12 |
| 55:16 | 35:4 65:17 68:6 | 51:3,12,15,17 | 22:24 23:13 |
| **moved** 70:23 | 69:3 71:19 | 78:2 | 48:7 66:12,15 |
| **moves** 82:6 | 82:20 | **numbers** 13:20 | **occasions** 57:20 |
| **moving** 9:22 | **negative** 68:1,22 | 13:22 14:5,20,23 | 58:17 |
| 42:8 71:3 | **negotiation** 22:6 | 17:19 18:4 19:2 | **occur** 5:13 67:12 |
| **multiple** 12:22 | 48:1 | 20:13 21:12,13 | 73:8 |
| 13:19,22 57:20 | **non** 29:11 47:13 | 23:23 | **occurs** 72:14 |
| 59:17 | 58:8 | **nutshell** 8:13 | **october** 1:8 |

| **n** | **nonalignment** 19:2 | **o** | 15:18 40:7 58:3 |
|---|---|---|---|
| **n** 84:2 | **nondisclosure** | **o** 84:2 | 84:13 |
| **name** 21:4 49:2 | 44:19 | **object** 37:2 | **offer** 57:9 59:18 |
| 49:2 | **noninfringement** | 52:13 | **offered** 58:6 |
| | 54:12,20 62:3,5 | | 59:17 69:13 |

office   4:4
official   84:7
offload   81:18
oh   76:4 80:1
okay   7:7 44:12
   60:10
once   80:10
ones   39:18,20
ongoing   62:22
   62:24
open   81:15
opening   38:10
operation   76:6
   78:11,23
operations   78:7
opinion   28:14
   66:4
opportunity
   4:11 26:5 27:9
   36:21
opposing   43:3
   82:10
opposite   74:9
opposition   10:14
oracle   14:15
   18:10,24 19:13
oral   5:19 31:15
   61:20
orally   35:18
order   4:9 5:20
   12:12 28:7,12
   31:5,16,22 33:1
   33:6,15 34:19
   35:3,10,17 36:6
   36:7 37:8 38:6
   40:10,19 42:18
   43:17,19 45:7,10
   45:12,14 50:16

51:24 52:3 57:5
   61:20 62:13,13
   63:6 67:20
   70:15 73:6,7,16
ordered   28:19
   32:5 34:18 67:9
   75:18
orders   46:22,23
ordinary   17:12
   20:9 21:10
   27:19
organized   20:15
   21:10
original   16:17
originally   6:20
   13:11 18:15
outcome   65:2
outlining   43:4
outlook   20:21
outside   34:2
   38:20 39:12
outstanding   38:1
   43:8
overall   33:14
overbroad   11:20
   46:5 77:6,15
   79:6
overburdening
   4:20
overgeneralized
   11:20
overlap   44:6
overlaps   76:14

## p

p   2:11
p.m.   1:14 20:2
   83:6

pacific   7:16 9:23
   10:1 11:3 21:22
   22:1,6 25:6
   26:17
package   49:1,5
page   4:21 6:13
   10:9 12:4,5,16
   12:17 16:10,11
   17:5 20:21 38:9
   39:14 42:7 50:2
   50:14 62:12
   65:4 76:8,8
   78:15 80:19
pages   4:16 5:2
   5:10 6:1,4 11:22
   12:23 14:23
   26:9 31:18
   61:18 63:16
paired   6:2
pale   23:8
papers   61:8
paragraph   16:10
   38:11 78:17
paragraphs
   38:15 44:15,23
paraphrase   29:7
pardon   50:19
parse   76:18
part   12:19 13:20
   13:22 14:23
   17:5,19 18:4
   19:2 21:4,12,13
   21:15 29:10
   31:5 47:24
   55:14 59:21,23
   70:13 81:19
particular   9:14
   29:17 30:21

40:1 48:4 57:3
   69:10
particularly
   9:24 10:13
   21:18 69:8
   71:15 76:18
parties   14:11
   19:21 20:6
   24:13,24 25:10
   28:9 32:11
   37:22 38:2,23
   43:2,5,22 46:19
   48:23 60:23
   61:1,9 62:1,15
   62:16 64:3,8
   67:10,14 71:10
   73:2 81:9
parts   12:5
party   10:17,21
   17:8,16 41:13
   42:1,15 43:4,14
   49:6 50:10
   67:22 68:15,18
   82:6
party's   82:10
passed   44:5
password   34:6
patent   7:19
   11:11 22:3 23:4
   25:13,16 65:5,6
   65:20 66:1
patentee   65:9,20
patentee's   22:3
patents   48:13
   65:11,16
pay   57:9,21 58:6
   58:14,18 59:10
   59:17,20

**[pays - process]**                                                      Page 16

**pays**  58:22
**pdf**  6:20 16:17
  18:8,15
**pennsylvania**
  1:24
**perdiem**  3:3,19
  3:21 5:24 8:22
  9:20 11:19
  16:12 19:15
  20:16 21:5,8
  22:15 25:7 26:4
  27:8 28:5 36:13
  36:21 37:5,10
  41:19 42:16
  45:14 47:19
  50:16 51:3,4,9
  51:20 52:14
  53:10,17,23
  55:23 56:5 57:6
  57:12 58:6,18,22
  59:5 61:6 63:12
  68:24 69:3,5,21
  71:18 75:16,18
  77:3,22 81:15
**perdiem's**  4:7
  22:19 25:1 31:9
  38:10 42:8
  51:23 53:3 54:6
  56:7 58:4 62:3
  64:5 73:5
**perdiemco**  1:3
**performed**  53:20
**period**  15:11
**permission**
  32:11
**personal**  64:18
**personally**  58:13

**personnel**  59:5
**persuasion**  25:8
**persuasive**  75:3
**perusing**  5:9
**peter**  2:3 3:18
**phases**  68:6
**philadelphia**
  1:24
**picked**  71:23
**piece**  23:4
**pincited**  26:11
**pinpointed**  46:7
**plaintiff**  1:4 2:9
  3:15 4:14 12:24
  19:3,7 27:18
  37:20 69:13
  70:10,18 74:19
  75:4 76:2
**plaintiff's**  6:5
**plaintiffs**  21:21
**plan**  38:4
**plans**  33:19
  34:10 39:1 42:4
**playing**  20:6
  24:21
**please**  45:4 61:4
**pled**  66:14
**pmazur**  2:4
**point**  4:22 5:7,8
  5:21 7:6,16 8:24
  10:5 11:12,13,21
  16:5 39:10,17
  40:22 43:7 44:8
  51:21 54:11,16
  55:7 56:2 64:24
  65:1,18 66:12
  69:22 70:5
  71:24 73:12

  80:15,22,23 82:5
**pointed**  20:21
**pointing**  23:19
**points**  80:1
**portions**  37:1
**position**  9:12
  43:9 45:13 55:3
  55:5 58:4 61:10
  61:18 62:5
  63:10 64:6 68:4
  79:21 80:4,5
**positioned**  38:13
**positions**  61:16
  66:17,18 67:3,15
  67:21 69:22
  70:7
**possible**  45:4
**possibly**  39:3
**posture**  73:21
**potential**  52:6
**potentially**  49:3
  56:15
**powergrep**  58:7
**practice**  43:20
  54:18
**practiced**  54:19
**practices**  65:6
  65:20
**precise**  39:22
  67:19
**prejudice**  42:24
  44:2 55:22
  56:22 82:4
**preliminary**
  39:18 40:9
**premature**  63:14
  70:1 74:19 75:4

**prepared**  29:11
**prerequisites**
  69:11
**present**  18:20
**presented**  27:3
  36:13
**presently**  74:22
**presumed**  11:7
**pretty**  71:10
**previous**  37:4,8
**previously**  28:19
  70:19 72:13
**price**  12:20
**prices**  20:13
**pricing**  34:10
**primary**  7:14
  47:15 55:3
**prior**  35:17
  37:23 42:18
  44:8 57:8 74:14
  79:14
**probably**  61:9
  73:3
**problem**  45:18
  46:6 67:6 73:1
**problems**  25:2
**procedural**
  73:21
**procedure**  42:12
  43:21 57:4
**proceed**  26:14
  28:21 66:20
**proceeding**
  74:15
**proceedings**
  3:13 84:7
**process**  4:9 18:9
  21:15 24:14

[process - quotes]                                                                 Page 17

25:4 47:8,20
49:19,22 63:7
71:9 80:11
**produce**  13:3
19:24 29:11,18
31:7 32:11
69:23
**produced**  6:20
10:17 11:15
12:16 13:11
15:14,17,22
19:19 20:1,12
21:2,6 24:5,17
24:19 35:15,23
35:24 36:24
37:17 38:12,15
39:4 41:7,11,14
42:10 43:13
44:22,24 45:1,19
52:19 63:4
76:20 77:9
78:20 79:3
**producing**  38:6
41:17 50:12
**product**  7:19
20:23 21:4 22:2
22:4 29:14 30:2
42:4 47:11
79:10
**product's**  78:22
**production**  4:16
4:23 6:13 8:10
8:24 9:5,9,15
10:9 13:1,16
19:5 24:3 25:2
26:7 27:7,16,23
28:20 33:7
35:21 36:18

37:23 41:4 42:2
42:19,20 43:1,14
46:2 77:4
**productions**
44:16 76:20
**products**  11:9
12:7,8,10 14:1
20:14,20,22
23:13 29:12,13
29:19,20 30:9,15
31:10,11 32:1,6
32:7 33:2,9
34:11,13,22
39:23 40:11
48:18 65:10,13
65:15,16 68:16
68:22 69:18
71:4 78:5,7 79:1
**profitability**
7:18 22:2 23:12
**profits**  7:9,11,20
8:19 9:21 11:9
12:9 15:10 19:6
19:8 21:17 22:4
22:10 27:22
**program**  8:5
**programming**
37:14
**projections**  39:1
42:4
**proof**  10:21
42:16 68:1
**proper**  16:21
77:2,19
**properly**  28:1,2
40:14 41:24
**proportional**
65:17

**proportionality**
11:2 42:13
**proposition**  75:8
**protective**  38:6
51:24 52:3
**prove**  68:21,22
69:3 71:19
**provide**  9:13
12:13 16:8
27:18 29:20
31:24 32:6,7,7
32:20 33:7
34:22 35:1 39:7
39:23 40:11,20
47:18 49:18
54:24 57:23
58:7 63:23
65:24 66:23
72:9 78:24 79:8
80:17
**provided**  8:19
9:7 12:11 16:8
16:17,18 19:4
22:14 28:7
30:10 34:3
38:22 39:10
44:20 48:2,18
63:15,24 74:20
75:5 78:18
**providers**  50:10
**provides**  51:16
**providing**  33:1
39:24 66:7 79:6
**proving**  68:18
68:23 69:5
75:21
**provision**  62:14

**public**  1:18
17:22
**publicly**  34:4
**published**  65:3
**pull**  14:21 58:11
**purpose**  63:6
**purposes**  10:19
**push**  81:4
**put**  4:11 9:22
15:5 20:6 28:24
31:14 44:9
45:15 53:8
61:16,20 72:4
**puts**  9:11
**putting**  9:17,19
15:7 46:11
57:16 75:2

**q**

**qualified**  60:14
**quantity**  12:20
**quarterly**  14:18
14:19 34:14
**queries**  8:4
**query**  49:13
**question**  37:20
70:8 71:15
**questioning**
47:23 48:4 63:2
**questions**  4:10
**quickly**  58:12
**quite**  11:6 14:17
25:21 35:8 37:3
56:6 73:17
**quote**  17:4 29:10
**quotes**  44:20

| r |
|---|

**r** 84:2
**raise** 33:11 38:5
 81:11
**raised** 4:8 22:22
 30:13 37:10
 40:2 43:5 54:10
 56:2 57:1 59:11
 59:16 70:21,24
 71:12 76:4,21,24
**raising** 57:6
**rcox** 2:12
**reach** 61:1
**reached** 48:1
**reaching** 74:9
**reaction** 57:14
**read** 4:21 5:9,22
 5:22 29:1 34:19
**readily** 60:20
**reading** 42:6
 45:11 80:18
**real** 63:8 72:24
**realize** 41:2
**really** 6:17,18
 23:8 30:21,22
 35:22,24 39:18
 40:9 54:9 59:18
 59:22 64:6
 67:18 68:7 70:1
 70:13 71:6 78:4
**realtime** 1:17
**reason** 6:22
 69:23 73:10
**reasonable** 7:11
 22:11 42:11
**reasoning** 68:19
 69:2,6

**reasons** 26:24
 41:18 42:23
 47:11 56:21
 79:23
**receive** 13:13
 24:2 33:18
**received** 12:24
 34:9,16 59:18
**reciprocal** 63:23
**recognize** 67:16
**recognized**
 73:13
**recollection** 72:3
**reconsider** 45:13
**reconstrue** 33:15
**record** 27:1,14
 41:2 42:13
 43:24 44:9,23
 47:12 49:3
 55:21 56:3
 64:16 76:13,24
 77:13 80:2
**records** 5:4 17:6
 17:14
**recreate** 5:2
**rectify** 77:6
**reducing** 52:6
**reevaluate** 54:21
**referee** 81:20
**reference** 11:3
 13:2 26:12
 32:13 50:3
**referenced** 19:1
 30:17
**referred** 15:15
 26:13
**referring** 22:3
 58:7

**refine** 45:13
**regard** 55:17
**region** 1:23
**registered** 1:16
**reimburse** 59:6
**reiterate** 71:23
 82:5
**reiterated** 57:21
**reiteration** 58:4
**relate** 53:23
**related** 33:19
 34:10 37:13
 48:8 69:8
**relates** 54:15
 60:21 78:5
**relating** 19:8
 30:19 62:7
 64:23
**relationship**
 78:8
**relatively** 59:22
**relevance** 11:2,7
 21:18,24 22:22
 41:17 42:12
 47:23 48:4,7,7
 50:21 52:16
 53:1 56:14,18
**relevancy** 50:12
**relevant** 7:20
 10:14,15 17:5
 21:19 22:10
 23:9,9 28:4
 29:12 30:22
 49:17 50:15
 52:8 53:4 54:2
 56:1 65:15
 78:18,21

**reliance** 13:2
 15:2
**relied** 7:14
**relief** 5:24 6:8
 9:10 10:12
 25:24 28:6,8
 43:9,15,16,18
 46:21 57:3
 61:24 73:5
 76:14,17 77:6,16
 79:22 82:11
**relies** 18:11
**rely** 6:24 7:22
 17:6 77:24
**relying** 13:8
 21:22 22:13
**remain** 25:2
**remainder** 25:21
**remaining** 9:4
**remember** 32:12
**remembered**
 49:1
**repeat** 31:16
 79:16
**repeating** 32:19
 42:3
**reply** 29:5
**report** 69:16
**reported** 1:15
 50:17
**reporter** 1:16,17
 1:18 3:8,10
**reports** 14:17
 34:10
**representations**
 43:11
**representative**
 6:10 26:9

**representing** 2:9
2:15
**reproduced**
13:12
**request** 6:7 8:17
9:14 19:18
22:17 28:6,8
35:12 36:2
41:23 47:3
76:17 77:6 79:8
79:12
**requested** 52:18
73:5 76:14
**requesting** 10:17
43:14
**requests** 9:4,5,8
11:14,21 25:17
25:24 35:9,21
36:18 42:19,20
43:10 46:6,23
76:15
**required** 27:17
38:2 46:15
**requirement**
17:13
**requirements**
25:23
**requires** 18:2
34:5
**requiring** 4:24
**research** 64:9
**resisted** 50:11
**resolve** 25:12
44:1 46:16,18
61:14 62:1
**resolving** 27:11
**resort** 23:22

**resources** 4:17
73:3
**respect** 9:3 51:5
77:23 78:17
79:5 82:3,13
**respectful** 4:17
**respectfully** 13:7
**respective** 67:15
**respond** 8:17
22:24 36:14
41:2 53:7 62:16
69:4,16 70:4,6
71:8,16,19 73:14
74:15 79:8
80:16
**responded** 48:6
78:14
**responding**
42:22 78:3
**response** 8:16,20
9:15 12:2 13:1,9
22:19 23:21
24:23 26:23
27:16 37:1 40:1
59:18 62:4
63:21,23,23 68:5
68:17 72:16
73:6,22 74:3
77:11 78:10,14
79:15 80:24
81:1,6 82:7,8,11
**responses** 9:8
54:7 63:12
64:11 66:23,24
67:4
**responsive** 15:16
29:23 30:24
38:23 39:3,5

52:15
**rest** 23:6
**restate** 31:17
**restated** 12:3
62:11
**revenue** 11:8
12:9,21
**revenues** 15:9
20:14
**review** 27:9
28:15 56:24
57:5,10 58:9
61:19
**reviewed** 29:8
**reviewers** 60:18
**reviewing** 60:1
**revised** 55:7
**revisit** 52:21
80:9
**rewritten** 40:14
**rfps** 33:10 36:24
37:1,2 39:17,19
40:6
**right** 3:11 4:7
8:14 17:1 18:18
18:22 22:18
26:21 35:7 38:8
41:22 48:24
52:9 54:4 55:6
55:19 58:11,21
59:8 60:3 62:2
67:13 69:24
71:20 73:4 82:2
**rmr** 84:5,15
**road** 42:5
**robust** 25:4
**rolling** 37:18

**room** 46:1 61:22
**roughly** 72:21
**royalty** 7:12
22:11
**rule** 7:4,23 11:2
14:12 15:2
16:20 17:2,2,5
20:6 22:14
24:23 26:21
27:16 28:15
43:18,20 54:6
77:13,24
**ruled** 77:14
**rules** 42:11
43:21 57:4
**ruling** 28:9
56:18 72:14
73:10
**rulings** 28:11,15
**run** 14:17
**running** 8:4
**ryan** 2:11 4:2

**s**

**sales** 5:4 12:6
19:14 21:1,5
39:1 42:4 44:20
52:24 56:10,11
**satisfied** 75:14
**save** 60:1
**saying** 6:11 10:7
12:22 29:19
36:8 46:12
63:14 66:6
70:13 78:14
79:2
**says** 16:11 17:2
36:7,7 40:10

**[says - stand]**                                                Page 20

65:4,14 78:16
**scale** 11:16
**scenes** 10:21
**scheduling** 62:13
**scope** 29:24
  33:14 47:9
  50:18 71:11,16
**se** 33:22 81:11
**seamlessly** 57:11
**sec** 14:19
**second** 16:10
  78:16 80:21
**secondly** 9:3
**secret** 52:2
**see** 9:18 11:21
  13:16 43:2,3
  44:24 58:12
  80:7 81:7
**seeing** 12:15
**seeking** 9:10
  32:11 67:18,20
  69:21 73:14
  78:4,9
**seeks** 57:3
**seen** 34:2
**sense** 9:16 22:12
  54:1
**sent** 38:1 43:3
**sentence** 31:14
**separate** 32:5,18
  58:17
**separately** 31:1
  31:13
**september** 70:11
  72:5,5
**serve** 28:12
  62:16 81:20

**served** 42:21
  63:11 75:16
**service** 49:2
**services** 12:10
  12:11 21:3,4
  38:13 48:18
  49:7
**set** 9:8 13:21
  24:18
**sets** 13:16
**setting** 67:17
**settlement** 30:16
  31:7,24 32:8,14
  32:15,21 35:4
  37:12,21 41:5
  45:8
**shared** 38:19
**sherry** 1:10 3:2
**shielding** 55:6
**shift** 75:20
**shipped** 12:20
**shoulders** 75:22
**show** 19:5 22:9
  42:16 45:14
  68:1,1
**showing** 11:22
  13:8 46:8
**shown** 13:5 54:2
**shows** 21:24
  38:13
**side** 9:17 10:14
  24:20 25:7,7
  46:1,1,14 66:6
  73:1 76:19 77:7
**side's** 9:15 61:10
  61:18
**sides** 4:10 11:1
  46:1 56:24

67:21
**signature** 84:13
**significant** 70:20
  71:11,14
**similar** 53:8
  79:22
**similarly** 77:14
**simple** 43:11
**simply** 15:3
  23:17 33:5
  63:22
**single** 38:12
**singled** 26:9
**sit** 46:1
**software** 59:4
**sold** 53:18
**solely** 62:20
**solution** 60:24
  61:1
**solutions** 1:22
**somebody** 30:6
**somewhat** 23:7
**sorry** 60:6
**sort** 21:8 31:14
**sought** 5:24
  16:14 43:16
  50:10 61:24
  78:19 82:12
**sounds** 52:22
  53:3
**source** 56:23
  57:5,10 58:9
  60:1,18 63:3
  79:1
**sources** 78:20
**south** 2:14
**southern** 75:9

**space** 5:12
**speak** 6:9 68:3
**speaking** 38:18
**speaks** 45:10
**specific** 6:1,1
  26:1,10 27:4
  28:2,6 30:17
  35:9 36:2 39:16
  39:18,20 42:19
  44:16,18 46:20
  46:22,23 47:3
  77:4
**specifically**
  26:11 35:20
  37:12 50:10
  54:14 58:15
  62:6,15,24 64:23
  74:7 79:5
**specifications**
  39:2 41:12 42:6
**specified** 78:12
**speculating** 66:3
**speedtrack**
  73:24 74:7
**spend** 16:3
**spoonfeed** 10:22
**spreadsheet**
  12:18 19:20
  20:15 27:8
**spreadsheets**
  13:14 15:14
  20:3,5,8 24:19
  26:4,16 27:17,24
  52:20
**stage** 70:1 73:23
  74:6 75:20
**stand** 36:19

standing  57:5
stands  62:23
stark  62:14 64:5
  65:14 66:2,3
stark's  63:6
  64:24 65:22
starting  7:16
starts  31:19
state  47:12
stated  37:16
  38:14 59:2
statement  29:16
  31:5 32:20
  72:19
states  1:1
stenographer
  3:7
stenographically
  1:15
step  54:18 81:7
steps  54:18
sticking  56:2
store  18:12
stored  18:13
  21:13 49:11
straightforward
  7:24 15:4
strategy  10:19
streamline  4:9
street  1:23 2:14
string  58:10
structure  76:6
  78:11
struggling  71:5
subcategories
  34:23
subject  59:13
  62:18 77:18

submission  9:23
  15:16 38:10
  42:8 61:10
submissions
  45:11
submit  22:8 54:1
submitted  15:17
subproducts
  29:14
subscription
  21:2
subsequent
  33:12 72:14,14
subset  48:17
subsidiary  30:19
substance  81:1
substantially
  17:8,15
substantively
  35:24
subtract  51:7
sufficiency  63:20
sufficient  6:5
  13:4 20:5 22:14
  43:24 74:24
  79:17
sufficiently
  55:23
suggestion  81:14
  81:22
suit  20:17
suite  1:23 2:7,11
suits  10:19
summarize  27:2
summarized
  45:17
summary  24:2

supervision
  60:15
supp  7:17
supplement  36:3
  54:22 67:4
  70:10,11 72:5
  73:6,13 75:18
supplemental
  26:23 29:9 54:6
  55:20 66:23
  73:22 82:7
supplementation
  70:18 72:6 73:8
  74:24
supplemented
  71:1
support  10:3
  75:7
supported  63:18
supporting
  80:21
sure  14:17 39:6
  46:14 65:7
susan  1:15 3:9
  3:12 84:5,15
system  18:11,24
  48:24 49:13
  53:16
systems  12:9
  51:7 53:19

**t**

t  2:13 84:2,2
table  59:7
tabulate  23:14
take  15:16 28:10
  46:2 63:10
  67:14

taken  22:5 77:3
takes  29:2 32:2
talk  25:12 26:3
  26:15 68:14
talked  24:10,24
target  70:22
  71:3
targeted  26:1
  28:3,6 46:21
team  13:15
tech  64:4,11 66:4
  68:13 69:1
technical  30:17
  39:2 42:5 59:5
teed  24:16 25:24
teleconference
  1:13 2:1 28:21
  83:5
tell  45:20 55:11
telling  42:1,9
  45:18
term  18:11
terms  20:7 25:13
  35:24 52:5 71:3
  80:8
testified  49:16
testify  8:3
texas  64:14,19
textual  63:17
thank  3:12,23
  4:6 5:18 19:9
  28:22 36:10
  40:24 41:21
  44:7,12 47:1
  52:11 62:10
  68:11 71:20
  79:24 82:22,24
  83:2,3

| | | | |
|---|---|---|---|
| **theories** 48:15 71:4 | **throw** 46:21 | **tracking** 34:13 | 36:6 38:18 |
| **theory** 53:5 54:24 | **throwing** 46:10 | **tracks** 19:14 | 50:17 53:17 |
| **thing** 18:7 69:5 | **thursday** 15:24 | **transactions** 5:2 | 59:24 71:7,16 |
| **things** 20:13 | **tied** 46:22 56:14 | **transcript** 28:12 | 78:6 80:3,4 |

**theories** 48:15
71:4
**theory** 53:5
54:24
**thing** 18:7 69:5
**things** 20:13
29:2 34:12 48:6
**think** 4:8,22 7:1
7:22 8:13 11:7
13:6,7,14,19
14:15 16:9
19:17 23:1 29:1
30:4,7 32:14
33:6,17 34:6
36:19 44:3,23
47:2,10 51:20
52:20 53:9 58:3
58:16 59:1,7,11
63:5,16 64:8,14
64:24 66:2 68:8
71:13,23 72:2
73:16 75:11,23
79:17,21 80:3,5
80:15 81:4,14
82:18
**third** 37:22
38:22 41:13
48:23 49:6
50:10
**thornburg** 2:10
4:2
**thought** 34:18
**thousands** 49:8
**three** 30:23
31:12,13 32:4,18
33:3 58:17
**threshold** 75:14

**throw** 46:21
**throwing** 46:10
**thursday** 15:24
**tied** 46:22 56:14
**tight** 5:12
**time** 4:17 8:6,6
13:15,17 16:3
18:21 22:23
41:3 53:6 57:6
57:15 59:15
60:1,19 68:2,3
69:10 70:3,20
72:2 73:3 79:18
79:19 82:21
**times** 5:23 53:12
59:17 70:23
71:2
**today** 3:19 21:18
21:21 27:14
28:12,14 30:22
35:18 41:6 53:4
56:13 79:18
**today's** 4:5
72:21 73:8
**told** 6:12
**tool** 58:7
**tools** 57:23 58:15
58:19 59:22
60:14,19
**top** 12:4 31:20
45:7 48:24
62:12 76:8
**total** 14:6 20:14
51:15
**totally** 7:11
**touch** 54:10
**tracked** 12:8,11
15:9 49:8

**tracking** 34:13
**tracks** 19:14
**transactions** 5:2
**transcript** 28:12
31:19 35:11,12
45:6 84:7
**treat** 31:1
**treating** 31:12
**trial** 58:8
**trim** 5:20
**true** 84:6
**truly** 33:20
**try** 5:6 20:16
80:12
**trying** 4:14,22
5:22 10:5 19:22
33:14
**turn** 38:8 56:23
**turned** 50:3
**turning** 51:22
**two** 8:21 13:16
25:19 33:16
37:24 38:14
42:19 44:23
47:9,21 49:20
64:21 73:8 80:1
**tying** 11:14
**type** 10:20 12:18
25:14 39:2
61:23 69:4
**types** 35:15
**typically** 34:12
34:15 64:21

**u**

**umbrella** 76:23
**understand** 5:21
14:3 16:12 18:4

36:6 38:18
50:17 53:17
59:24 71:7,16
78:6 80:3,4
**understanding**
6:15 45:23
**undertake** 60:17
**unfortunately**
29:3
**unit** 12:20 20:13
20:13
**united** 1:1
**units** 8:4,7 11:8
12:7 14:7 15:9
23:1,14 49:8
51:12,15
**update** 24:8
**updated** 67:5
**use** 10:18 14:15
17:19,19 18:10
20:23 21:8
48:18 60:19
65:22 78:23
**user** 10:23 24:20
37:14 41:12
49:6
**uses** 51:7 53:18
**utilities** 57:10

**v**

**va** 2:7
**valid** 76:24
77:10
**various** 30:10
**venture** 61:21
**veracity** 56:10
**verify** 56:11

[veritext - zoom]                                                  Page 23

**veritext** 1:14,22
**version** 5:3 6:2
  16:18 18:8 58:8
**versions** 17:22
**versus** 3:4 64:4
  75:12
**vetted** 25:3
**view** 25:1 75:20
  76:14
**views** 67:5,5
**virtual** 1:14
**virtually** 7:15
**volume** 6:7 12:7
  27:3
**volumes** 50:17
  56:10,11 77:8
**voluminous** 4:23
  6:4,23 12:23
  13:9 19:5
**vs** 1:5 73:24 75:8

**w**

**wait** 74:14 76:5
**waiting** 67:11
**want** 4:13 6:18
  6:21 7:23 8:7
  10:9 19:11
  23:19 26:15,16
  28:23 33:5,11
  40:13 41:1,3,6
  41:10 52:17
  68:9 76:13
  79:16
**wanted** 81:10
**wanting** 24:8
**wants** 60:16
**wasted** 73:3

**watch** 60:16
**way** 10:20 12:14
  13:10 17:12,14
  27:11 32:15
  34:19,20 35:12
  35:23 40:4,16
  43:12 78:4
  79:10,11
**we've** 21:6,18
  22:14 30:5
  34:16 36:17,20
  41:17 49:21
  51:20 52:14
  53:11 59:2 64:9
  64:21 67:8
  70:21,22,24 71:5
  76:4,9 77:8,10
  77:14 79:17
  80:10
**wealth** 10:16
**website** 34:5
**websites** 34:4,8
**wednesday**
  15:22 20:2 24:6
**week** 25:20,21
  47:21
**weeks** 38:4 55:9
  73:8
**weighs** 73:21
**went** 72:6
**whatsoever** 78:8
**williams** 28:15
  82:16
**willing** 57:21
  59:6,19 73:12
**wilmington** 2:4
  2:12

**withdraw** 80:6
**withdrawn** 82:4
**witnesses** 8:3
  49:15
**wl** 65:3 74:2
  75:10,13
**wondering** 45:3
**word** 40:14
**words** 64:12
**work** 8:15 10:20
  43:22 60:23
  61:4 78:5
**working** 16:2
  43:22
**writing** 28:13
**written** 23:20
  64:5
**wrong** 30:7

**z**

**zero** 60:20
**zoom** 1:14